**TEXAS PIPE BENDING COMPANY,**
**Appellant,**

v.

**Anson C. GIBBS, Appellee.**

**No. 17313.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 15, 1979.

Rehearing Denied April 12, 1979.

Writ Refused July 18, 1979.

Law Offices of Kenneth J. Will, Michael
W. Melton, Houston, for appellant.

Morgan, Dudensing, Webb, Tullis & Jensen, Kurt Arbuckle, Charles W. Tullis, and Paul Jensen, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and DOYLE, JJ.

COLEMAN, Chief Justice.

This is an action for the damages caused by personal injuries suffered by Anson Gibbs when he fell from a truck loaded with pipe on the premises of Texas Pipe Bending Company in Houston, Texas. The Employers Mutual Liability Insurance Company of Wisconsin intervened seeking to recover Worker's Compensation benefits paid to Mr. Gibbs.

The jury found that the injuries sustained by Gibbs were proximately caused by the negligence of Texas Pipe Bending Company. Based upon the verdict and certain stipulations, judgment was rendered for Gibbs in the amount of $61,933.00 and for the insurance company in the amount of $9,746.10.

On this appeal Texas Pipe Bending Company asserts that the trial court erred in overruling its hearsay objection to the testimony of Eddie Stewart and in submitting a *res ipsa loquitur* instruction to the jury in connection with special issue number one. The appellant also submits that there is no evidence or, in the alternative, insufficient evidence to support the answer made by the jury to this special issue. Finally the appellant asserts that the trial court erred in refusing to submit its requested special issues concerning proper lookout.

Anson C. Gibbs was employed by Consolidated Freightways as a truck driver. On June 4, 1970, he drove a Consolidated Freightways truck to the yards of the Texas Pipe Bending Company and signed in at the guard gate. He then went to the shipping department and informed someone in that department that he was with Consolidated Freightways and was there to pick up a load of pipe. A man operating a gin pole truck and his helper loaded the Consolidated Freightways' truck with the pipe. Mr. Gibbs did not know the names of these men, but he had seen them working there before.

Before the loading operation began, the gin pole operator placed six heavy pipe stakes in brackets built on the truck to prevent the pipe from falling off the truck during the loading operation. After the loading was completed, Mr. Gibbs went into the office and got a bill of lading. He returned to the truck and climbed on top of the load in order to boom it down. This operation consists of tightening and securing chains over the load. This operation prevented the pipe from falling off the truck when the stakes were removed. After Mr. Gibbs finished booming down the pipe at the front and the rear of the truck, he went to the chain in the middle of the truck. While he was stooped over working with this chain, with his back to the gin pole operator, he was knocked from the truck.

There was testimony that the gin pole operator and his helper began the operation of removing the stakes from the truck while Gibbs was working on the boomer chains located in the middle of the truck. A cable would be wrapped around the stake by the helper and the gin pole operator would then use his hoist to remove the stake. Mr. Gibbs testified that just as he got the chain hooked "they yanked that thing out there." He saw a shadow coming at him. He testified that the stake struck him on the head.

Mr. Eddie P. Stewart, terminal manager for Consolidated Freightways was notified of the accident. He drove out to the scene of the accident and found Mr. Gibbs sitting under a tree on the pipe lot. He talked to Mr. Gibbs and found that he was hurt, but that he did not know how he had been injured. After eliciting this information the attorney for Mr. Gibbs asked Mr. Stewart: "and so then you had a conversation with whom?" The attorney for the defendant then objected on the ground that "it is hearsay and not responsive. It is not res gestae." The court overruled the objection. Mr. Stewart then testified that he had a conversation with a man there on the premises who said that he was operating the

vehicle that had the gin pole on it and they were loading pipe. He did not know this man's name. In answer to a question "do you know who he worked for", Mr. Stewart answered: "he said he worked there". The attorney for the defendant then asked the court to instruct the jury to disregard the answer on the ground that it was hearsay and not res gestae. The court overruled the question and denied the request. Thereafter without further objection he detailed his conversation with this man and testified that while Mr. Gibbs was on the float trailer booming down the pipe the gin pole got loose. Mr. Stewart was again asked whether the man said he worked for Texas Pipe Bending Company and an objection was made to the effect that the answer would be inadmissible to prove agency. This objection was overruled. Again Mr. Stewart was permitted to testify without objection that the man told him "the gin pole got loose and knocked him off". At the time he testified, Mr. Stewart was no longer employed by Consolidated Freightways Company.

The objections to Mr. Stewart's testimony on the ground that it was hearsay were lodged at answers to questions designed to produce information that the unidentified gin pole operator was employed by Texas Pipe Bending Company. In connection with special issue number one, the trial court included in its instruction to the jury the phrase "if you find that the use of the gin pole truck causing the accident was under the management and control of Texas Pipe Bending". In effect the jury was instructed that the accident was caused by the use of the gin pole truck. While an objection was made to the charge on the ground that it was a comment on the weight of the evidence, no point of error complaining of this has been presented in appellant's brief.

■■ Unless it is admissible under an exception to the hearsay rule, hearsay evidence even though admitted without objection has no probative value. If no objection is made, the admission of hearsay evidence does not constitute reversible error.

■ Agency cannot be shown by the declarations or statements of the alleged agent or servant standing alone; but where there is evidence sufficient to show the fact of agency or employment prima facie, declarations or statements of the alleged agent are admissible in corroboration. *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442 (1941).

■ In a negligence action in which the defendant's liability to the plaintiff depends upon proof of a master and servant relationship between the defendant and a third person, such relationship is prima facie established by showing that the alleged servant was performing services peculiar to the defendant's business or affairs on or about the latter's property. *McAfee v. Travis Gas Corp.*, supra; *Ochoa v. Winerich Motor Sales Co.*, 127 Tex. 542, 94 S.W.2d 416 (1936).

■ While it is asserted that the identity of the person operating the gin pole truck on the occasion in question is unknown so that he cannot be produced as a witness, there is no evidence, direct or circumstantial, to contradict Gibbs' testimony that the accident occurred on the premises of Texas Pipe Bending Company and that the loading operations were conducted by two men using a gin pole truck. Since there is no evidence to show that the operator of the gin pole truck was not an employee of Texas Pipe Bending Company, the statement he made to Eddie Stewart that he was employed by Texas Pipe Bending was admissible. *Ochoa v. Winerich Motor Sales Co.*, supra; *Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763 (1940); *Texas State Bank v. Elliott*, 533 S.W.2d 404 (Tex.Civ.App.—Beaumont 1976, no writ).

By special issue number one, the trial court asked the jury whether the appellee's fall was caused by the negligence of the appellant. In connection with this issue he gave an instruction on *res ipsa loquitur*. The appellant objected to the issue on the ground that there was nothing in the plaintiff's pleading indicating that he would rely on the *res ipsa loquitur* doctrine.

■ The plaintiff does not necessarily lose his right to rely on the *res ipsa* doctrine by pleading specific acts of negligence. If he pleads specific acts of negligence only, his proof is limited to those specific acts. If his pleading gives fair notice that he is not relying solely on specific acts but instead intends to also rely on any other negligent acts reasonably inferable from the circumstances of the accident, his pleading is sufficient to invoke the *res ipsa* doctrine. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245 (Tex. 1974).

Mr. Gibbs alleged that the accident resulting in his injuries was proximately caused by the negligence of the defendant (1) in failing to properly supervise the work of his employees, (2) in failing to properly operate his equipment, and (3) in failing "to use ordinary care" in the performance of loading the pipe. These varied general allegations fail to name any specific act which might constitute negligence. While failure to properly supervise its employees might be considered a specific allegation of negligence, the failure to properly operate equipment or to use ordinary care in loading pipe amount to general allegations of negligence.

■ *Res ipsa loquitur* is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to be under the management and control of the alleged wrongdoer. *Honea v. Coca Cola Bottling Co.*, 143 Tex. 272, 183 S.W.2d 968 (1944).

In the *Honea* case, the plaintiff alleged specific acts of negligence but also alleged that he would not be confined to the specific acts charged but would rely on the general allegations of explosion and defectiveness and the overcharging of said bottle of Coca Cola. It was also alleged that the plaintiff could not more specifically allege the negligent acts of respondent because the same were peculiarly within its knowledge. The Supreme Court held that these allegations were sufficient to give notice that the plaintiff did not propose to be bound by his specific allegations of negligence.

In an earlier case, the Supreme Court specifically addressed the question of the allegations which a plaintiff must include in his petition in order to advise his advisory that the *res ipsa* rule may be invoked. *Wichita Falls Traction Co. v. Elliott*, 125 Tex. 248, 81 S.W.2d 659 (1935). The court first pointed out that the courts generally in this State recognize the *res ipsa loquitur* formula as being merely a rule of evidence and that it is applied frequently without specific designation. The court stated that the rule being one of evidence, there is no reason logically for restricting its application to cases in which general negligence is alleged. A practical difficulty is found in the fact that the terms "general" and "specific" are relative, and obviously could not serve as an invariable test of applicability. It concluded that the degree of generality of allegation becomes immaterial except as to fixing the scope of the burden of plaintiff and the scope of the field of testimony in rebuttal of plaintiff's prima facie case. The court held that an allegation in plaintiff's petition that the defendant was using a wire "defective in some manner unknown to plaintiff" together with allegations asserting that the management and control of the equipment which produced the injury was with the defendant exclusively, was sufficient to advise the defendant that the rule may be invoked despite the fact that a number of specific allegations of negligence were included in the petition.

■ Mr. Gibbs has alleged that the defendant, through its employees, failed to properly operate the defendant's equipment so as not to injure the plaintiff. In effect the plaintiff has charged that the defendant's employees operated the defendant's equipment in a manner that resulted in an injury to the plaintiff. This is a sufficient allegation that the equipment was under the management and control of the defendant. He also alleged that the employees

failed to use ordinary care in loading the pipe. This is a general allegation of negligence. We conclude that these allegations constituted sufficient notice to the defendant that the plaintiff might rely on the doctrine of *res ipsa loquitur*.

The facts are such that a conclusion could be drawn that the loading operation was not completed until the stakes were removed from the truck. There is evidence that the process of removing the stakes and the operation of the gin pole truck were solely controlled by the employees of the defendant. At the time of the accident, the plaintiff was standing on the top of the load of pipe some eight to twelve feet from the position of the stake to be removed by use of the hoisting machine. The plaintiff testified that just as he latched the middle boom chain he "seen something, felt something coming, hit me right upside the head." He testified that he didn't see anybody out there except the people with Texas Pipe Bending, and there were no other trucks there.

On cross-examination the plaintiff was asked: "you are saying somehow this stake they were pulling out of the bed of the truck came across that bed twelve or fifteen feet and struck you, you think?" Mr. Gibbs answered: "that is what I know. See, that cable, when stuff is released, it curls up, jumps like a rattlesnake." He testified that the stake hit him on the head and knocked him off the truck.

Mr. Stewart testified that when he arrived on the scene Mr. Gibbs appeared to be disoriented. He was taken to the hospital. Stewart also testified that the gin pole on the Texas Steel Pipe Bending's equipment did not belong to Consolidated Freightways.

From the evidence, the trial court reasonably could have determined that the character of the accident was such that it would not ordinarily occur in the absence of negligence and that the instrumentality causing the injury was under the management and control of the defendant. Having made such a determination, the trial court was not in error in submitting an instruction on the rule of *res ipsa loquitur*. *Mobil Chemical Co. v. Bell*, supra.

The points in appellant's brief challenging the sufficiency of the evidence to support the jury finding in response to special issue number one cannot be sustained. The effect of successfully invoking the *res ipsa* doctrine is that the plaintiff can survive "no evidence" procedural challenges— he has produced some evidence of the defendant's negligence. He is in the same position as any other plaintiff who has made out a case for the jury. No presumption of the defendant's negligence arises; the jury is merely free to infer negligence. *Mobil Chemical Co. v. Bell*, supra.

The appellant produced evidence impeaching some of the testimony given by Mr. Gibbs. Doctor Ralph Lyles, who treated Mr. Gibbs at the hospital, testified that Mr. Gibbs told him that he was using a cheater pipe on the end of the boomer to get more leverage and that it slipped causing him to fall from the truck. Mr. Gibbs also identified a document entitled Notice of Injury and Claim for Compensation as bearing his signature. It was dated some twenty-two days after the accident. This instrument bore the statement "I was booming down a load of pipe at Texas Pipe Bending—and the cheater pipe slipped off the boomer and I was knocked off the truck —". Mr. Gibbs testified he did not remember signing that instrument and that he was not using a cheater pipe before the accident.

Dr. Liles also testified that the records of St. Joseph Hospital reflect a statement made by Mr. Gibbs to the records clerk when he was admitted which reads: "the patient stated he fell from a truck, injuring his hips, abdomen and left hand when a pipe hit his hand. He says he was 'out' for a few minutes." While this statement, and the other statements above set out, reflect on the credibility of Mr. Gibbs, nevertheless his statements together with the inferences properly to be drawn from the circumstantial evidence giving rise to the rule of *res ipsa loquitur* furnish sufficient support for the jury finding in answer to special issue number one.

Finally, the appellant contends that the trial court erred in refusing to submit to the jury a requested special issue inquiring whether Anson Gibbs failed to keep such a lookout as would have been kept by an ordinary prudent person under the same or similar circumstances.

Mr. Gibbs' testimony indicates that he knew that the appellant's employees were preparing to remove one of the stakes from the truck by use of the hoisting device. He was at that time attempting to engage the locking device after tightening the boomer chain. He was standing on round pipes and presumably was exèrting considerable pressure on the boomer handle. He did not expect the operator of the gin pole truck to begin removing the stakes until he had finished booming the load. He had participated in the loading of pipe on the trailer many times at the Texas Pipe Bending plant. The evidence is insufficient to raise an issue as to whether he failed to keep such a lookout as would have been kept by an ordinary prudent person under the same or similar circumstances.

The judgment is affirmed.