Kerry L. JACKSON, Appellant,

v.

ASSOCIATED DEVELOPERS OF LUBBOCK and Don Osborne, Appellees.

No. 8962.

Court of Civil Appeals of Texas, Amarillo.

April 16, 1979.

Rehearing Denied May 21, 1979.

Crenshaw, Dupree & Milam, Cecil C. Kuhne and J. Orville Smith, Lubbock, for appellant.

Stokes, Carnahan & Fields, Robert N. Carnahan, Amarillo, for appellees.

DODSON, Justice.

Kerry L. Jackson sued Associated Developers of Lubbock and Don Osborne for personal injuries which he sustained in a fall on a steel spiral stairway located in a building owned by Associated Developers. Mr. Jackson was employed by a building tenant. The case was tried to a jury on negligence and contributory negligence issues. The jury found both parties negligent and apportioned the negligence thirty-five percent to Mr. Jackson and sixty-five percent to Associated Developers.[1] Based on the jury's verdict, the trial court entered judgment for Mr. Jackson in the amount of $16,941.40. Both parties appeal from the judgment. We modify the judgment to decree the full jury award to Mr. Jackson, and as modified, we affirm the judgment.

Mr. Jackson attacks, *inter alia,* the unfavorable contributory negligence and proximate cause findings with legal and factual sufficiency points of error. He further maintains that the court erred in submitting these issues because Associated Developers failed to prove a predicating duty on his part. Associated Developers attacks the legal and factual sufficiency of the evidence to support the jury finding of $10,000 for Mr. Jackson's future medical expenses and in the alternative requests a remittitur of $8,000.

Mr. Jackson was employed as manager of the Lubbock office of Firemen's Fund Insurance Company. This company leased office space and basement storage areas in No. 10 Briercroft Office Park, a building owned and maintained by Associated Developers. The Firemen's Fund offices were located on the first floor level. A small hall leads from the office space area through a landing area to the entrance of a spiral stairway extending to the basement. Portions of the landing area adjacent to the spiral stairway entrance were used by Associated Developers to store janitorial equipment and supplies.

On the day of the accident, Mr. Jackson proceeded from the office space area through the landing to the entrance of the metal spiral stairway and descended the stairs to the basement. After obtaining certain supplies from the storage area, he was ascending the spiral stairway when, about halfway up the stairway, he was struck by a falling box containing fluorescent light bulbs. Mr. Jackson fell backwards down the metal stairway, sustaining injuries to his back, left knee, and left foot.

It is undisputed that Associated Developers kept a large box containing fluorescent light bulbs stored in the landing area which was used as a janitorial service area. However, the evidence does not conclusively es-

---

1. The position of Associated Developers and Don Osborne is the same in this appeal; therefore, we will simply refer to both parties as "Associated Developers" without any inferred legal significance.

tablish the exact location of the box immediately before the accident. It is further undisputed that Associated Developers had exclusive control of, and was responsible for, the maintenance of the specific areas pertinent to the accident, i. e., the hall, the landing, the metal spiral stairway, and the area leading from the stairway at the basement level to the storage areas. It is also undisputed that Firemen's Fund Insurance Company and its employees had no obligation to maintain or control any of these areas and that Mr. Jackson had a legal right to traverse these areas as a part of his employment with the insurance company.

The jury found, inter alia, that a box containing light bulbs fell from some point around the top of the spiral stairway, down the stairway, on the occasion in question; that the janitorial employee of Associated Developers had placed the box of light bulbs in whatever position they were in at the time they fell down the stairway; that the act of the janitor in placing the box of light bulbs in such position was negligence; and that such negligence was a proximate cause of the injury to Mr. Jackson. These jury findings are unchallenged by Associated Developers.

The jury also found that Mr. Jackson was negligent in allowing the box of fluorescent light bulbs to remain in a hazardous position, if same constituted a hazardous position, or in not removing the hazardous condition and that such act or omission was a proximate cause of the occurrence in question. Mr. Jackson attacks this jury finding with legal and factual sufficiency points. He also maintains that: the trial court erred in overruling his motion for judgment notwithstanding the jury's answer to this special issue because there was no evidence to raise the issue; the undisputed evidence establishes that Mr. Jackson did not know of the presence of the box of light bulbs around the top of the stairway; there is no evidence that he knew the box of light bulbs was in a precarious position; he was not the person who had management or possession of the box containing light bulbs; he had no duty to inspect the premises for dangerous or precarious conditions; and he had no duty to keep a lookout over the box containing the light bulbs or its location.

## I.

In *Harvey v. Seale,* 362 S.W.2d 310 (Tex. 1962), our Supreme Court returned this type of premises case, i. e., landlord-tenant, "to trial upon negligence principles, that is, whether the plaintiff and defendant acted reasonably." *See also Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 519 (Tex.1978). The duty of Associated Developers is unchallenged; therefore, we speak to matters related to the duty of Mr. Jackson.

▮▮▮ Although Mr. Jackson had no duty to inspect the premises for latent precarious conditions, he had the duty to exercise ordinary care for his own safety. *See Peck v. Peck,* 99 Tex. 10, 87 S.W. 248, 249 (1905); *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413, 417 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.). Contributory negligence is a breach of duty to exercise ordinary care to avoid injury. In *Camp,* the court stated:

An invitee is also under a duty to exercise reasonable care for his own self-protection against dangers of which he knows or ought to know. . . . Actually, an invitee's knowledge of danger or the existence of facts from which he ought to have knowledge is relevant on the issue of the invitee's own contributory negligence.

In *Kenny v. El Paso Electric Company,* 371 S.W.2d 777, 780 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.), the court also stated:

It is the essence of contributory negligence that the person to be charged therewith knew, or by the exercise of ordinary care should have known, of the circumstance or circumstances out of which the danger arose.

▮▮▮ Knowledge of the peril which subsequently results in injury gives rise to the duty to exercise ordinary care to avoid injury. This duty knowledge consists of actual knowledge, as well as constructive or implied knowledge. *See Camp v. J. H. Kirk-*

*patrick Co., supra; Kenny v. El Paso Electric Company, supra.* Each phase of knowledge presents different duty considerations. *See* 57 Am.Jur.2d *Negligence* § 338 (1971); 65A C.J.S. *Negligence* § 119 (1966). In the absence of knowledge, *i. e.,* actual or constructive, there is no duty, and without duty there can be no breach.

■ The determination of the existence of a legal duty is a question of law for the court. *Oldaker v. Lock Construction Company,* 528 S.W.2d 71, 77 (Tex.Civ.App.—Amarillo (1975), writ ref'd n. r. e.); *Webb v. City of Lubbock,* 380 S.W.2d 135, 136 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.). The determination is based upon the facts surrounding the occurrence in question. *Webb v. City of Lubbock, supra.* In contributory negligence considerations, duty knowledge is tested by the objective standard. *See Massman-Johnson v. Gundolf,* 484 S.W.2d 555, 557 (Tex.1972); *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 379 (Tex.1963).

The challenged issue, *i. e.,* that Mr. Jackson was negligent in not removing the hazardous condition, relates to the actual duty knowledge. It assumes that Mr. Jackson actually did see or knew the box of light bulbs was in a precarious position, if it was, and then questions whether Mr. Jackson was negligent in allowing the box to remain in a hazardous position or in not removing the hazardous condition. In essence, the issue assumes Mr. Jackson had a duty to remove the box because he saw or knew it was in a precarious position.

Mr. Jackson objected to the submission of the challenged issue on the following grounds:

Object to Special Issue No. 5D for the reason that he could not be guilty of allowing the box of florescent light bulbs to remain in a hazardous position unless he knew that it was there, and there is not one line of evidence or suggestion that he knew or placed them there, and therefore he could not have had the duty to not allow the box of light bulbs to remain in a hazardous position.

Mr. Jackson testified in clear and unequivocal language that he did not see the box of light bulbs and that he did not know where the box was situated on the occasion in question. His pertinent testimony follows:

Q Mr. Jackson, we have—have shown and are showing to the jury pictures of the spiral stairway that you were on at the time that you got hurt.
 On April 8, 1975, were you on that stairway at the time you got hurt?

A Yes, sir.

Q At that time, where were you going or where had you been?

A I had been to our storage room in the basement and was coming back up the steps.

Q I wish you'd tell the jury, please, as to this spiral stairway, how often did you run up and down those stairs?

A Once or twice a month, I use those stairs.

Q And was it—did you ever, as you used those stairs, look around this storage area to see if everything that was stored there was carefully stored?

A I used it. I didn't go in there and examine the area before I used it. If the way was clear, I went through.

Q Had you ever had the experience of starting down the stairs or up them either, and having something that was stored up there tumble down on top of you?

A No, sir.

Q In the once or twice a week that you used those stairways, did you ever actually observe a box of bulbs, or anything of that general nature setting in a position where it might tumble off of there?

A No, sir, I used the stairway, maybe once or twice a month.

Q Once or twice a month?

A Not a week, and I didn't notice any unsafe situation concerning a box of light bulbs.

Q When you left your office and went down the stairway, of course, you had to go to this steel landing as these pictures and down around—

213

A Yes, sir.

Q —is that right?

A Yes, sir.

Q Did you notice anything setting there that looked like it was about to tetter over and fall off?

A No, sir.

Q Did you look for anything like that?

A No, sir.

Q Was it any part of your job or duty to police that area?

A No, sir.

At the trial Mr. Jackson testified in retrospect as follows:

Q Do you know where the thing fell from? Of your knowledge, I mean?

A I'm reasonably sure where it fell from. It fell from the righthand corner at the top of the stairs.

Q Now, you have testified to that before in your deposition. Did you see it setting up there in that righthand corner ever before it fell?

A I had seen the box there in that room, but I don't recall seeing it in that spot.

Associated Developers points us to no other evidence purporting to establish the assumed duty fact that Mr. Jackson knew or saw the box in a precarious position. Associated Developers failed to establish that Mr. Jackson actually knew the box was in a precarious position, if it was. In the absence of actual knowledge that the box was in a precarious position, if it was, then there was no duty to remove it. Without the duty to remove the box, then there was no breach of the duty by allowing the box to remain in a hazardous position, if it was. *See Texas Utilities Co. v. Dear,* 64 S.W.2d 807, 811 (Tex.Civ.App.—Amarillo 1933, writ dism'd); *Texas-Louisiana Power Co. v. Webster,* 59 S.W.2d 902, 910 (Tex.Civ. App.—Dallas), *aff'd,* 127 Tex. 126, 91 S.W.2d 302 (1936). *See also Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex. 1963); *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442 (1941); *San Angelo Water, Light & Power Co. v. Anderson,* 244 S.W. 571, 573 (Tex.Civ.App.—San Antonio 1922, writ dism'd). Under the circumstances of this case, we conclude that the trial court erred in submitting the challenged issue to the jury over Mr. Jackson's objection.

Nevertheless, Associated Developers contends that Mr. Jackson, in the exercise of ordinary care for his own safety, should have known or should have seen the box in a precarious position, if it was. Associated Developers then suggests that we should presume findings in support of the judgment to the effect that Mr. Jackson failed to keep a proper lookout for the box in a precarious position and that such failure was a proximate cause of the injuries sustained by Mr. Jackson. These matters relate to constructive duty knowledge.

Associated Developers requested and obtained jury findings on two shades of proper lookout. However, the jury's answers to these issues do not support that portion of the judgment favorable to Associated Developers. Our determination on the challenged issue leaves that portion of the judgment favorable to Associated Developers without the support of favorable jury findings.

Associated Developers did not plead, request, or obtain jury findings on whether Mr. Jackson failed to keep a proper lookout for the box in a precarious position, if it was, and that such failure was a proximate cause of the injuries sustained by Mr. Jackson. Likewise, Associated Developers does not contend that these issues were conclusively established as a matter of law, nor does the evidence support such a contention.

Rule 279 of the Texas Rules of Civil Procedure clearly provides for deemed findings only in support of the judgment, not to form the basis of a judgment. Under the circumstances we conclude that the unsubmitted issues are waived. *See* Tex.R.Civ.P. 279; *Wichita Falls & Oklahoma Ry. Co. v. Pepper,* 134 Tex. 360, 135 S.W.2d 79, 84–85 (1940). We respectfully decline to follow Associated Developers' suggestions and overrule its contentions.

In summary, we conclude that the trial court erred in submitting the challenged issue to the jury. Mr. Jackson filed his motion for judgment notwithstanding the jury's findings that his negligence was a proximate cause of his injuries and that this negligence contributed thirty-five percent to the accident. The jury refused to find Mr. Jackson guilty of any other negligence which it determined to be a proximate cause of the occurrence in question. In point of error one, three, and five, Mr. Jackson presents these matters for review in this court. Under the circumstances of this case, we sustain these points of error.

## II.

By cross points of error, Associated Developers challenges the legal and factual sufficiency of the evidence to support the jury finding that Mr. Jackson was entitled to $10,000 for future medical expenses. Associated Developers further contends that the $10,000 award is excessive in the amount of $8,000.

 The award of future medical expenses is a matter primarily for the jury to determine. No precise evidence is required. The jury may make its award based upon the nature of the injuries, the medical care rendered before the trial, and the condition of the injured party. *City of Houston v. Moore,* 389 S.W.2d 545, 550 (Tex.Civ.App.— Houston 1965, writ ref'd n. r. e.); *Edens-Birch Lumber Co. v. Wood,* 139 S.W.2d 881, 887 (Tex.Civ.App.—Beaumont 1940, writ dism'd judgmt cor.).

 In considering the legal sufficiency of the evidence to support the award of future medical expenses, we must examine the record for any probative evidence which supports the finding and disregard all contrary evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In reviewing the factual sufficiency of the evidence to support the jury finding, we must examine the entire record to determine if there is some probative evidence to support the finding and determine if in light of all the evidence the finding is not manifestly unjust. *Garza v. Alviar, supra; In re King's*

*Estate,* 150 Tex. 622, 244 S.W.2d 660, 661–62 (1951).

 On April 8, 1975, Mr. Jackson injured his back, left knee, and left foot in the accident from which this suit arises. These injuries necessitated medical examinations, medication, physical therapy, hospitalization for an operation on the left knee and for a subsequent operation on his left foot. The cost to Mr. Jackson for these items and services was $6,063.69, which represented all medical expenses incurred through December 12, 1977, the date of trial. These expenses included $266.79 for medication and $1,861.50 for physical therapy.

At the time of trial, Mr. Jackson was 42 years old and had a life expectancy of 33.1 years. He testified that he continued to suffer pain from, and have problems with, each of his three injuries. He continued to take medication and to receive physical therapy treatments three times a week.

Dr. Mayes, an orthopedic surgeon, testified that Mr. Jackson was still under treatment at the time of trial and that he would continue to see Mr. Jackson for some time. He further stated that Mr. Jackson needed to continue his medication and physical therapy. With regard to the back injury, he testified that Mr. Jackson probably had a low grade ruptured disc in the low back area and that he was not willing to perform, and Mr. Jackson was not willing to undergo, surgery at the time of trial. However, Dr. Mayes said he would probably go along with surgery if the back condition did not improve. He was uncertain whether the surgery would consist of removing the disc or would require a spinal fusion. Concerning the knee injury, he testified that Mr. Jackson had not fully recovered from the surgery and was still experiencing pain, that he expected Mr. Jackson's knee to develop some degenerative change in a period of years which might require medical treatment, and that an operation might become necessary. Finally, he testified that the $6,063.69 in medical expenses incurred prior to the date of trial were reasonable and

necessary in light of the injuries sustained by Mr. Jackson.

Dr. Dunn, a specialist in neurological surgery, testified that at the time of trial the reasonable cost of back surgery would be approximately $2,000. However, if a fusion of the spine was required the price of surgery would be $4,000. He also stated that it should be known within two to three years whether back surgery would be required.

We conclude, after our review of the entire record, that the jury finding that Mr. Jackson was entitled to $10,000 for future medical expenses is supported by some probative evidence and the finding is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. Accordingly, Associated Developers' legal and factual sufficiency points are overruled. Our analysis of these points is also dispositive of the contention that the $10,000 award is excessive in the amount of $8,000. *See Hammond v. Stricklen,* 498 S.W.2d 356, 363 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Monsanto Company v. Milam,* 480 S.W.2d 259, 268 (Tex.Civ.App.—Houston [14th Dist.]), *aff'd,* 494 S.W.2d 534 (Tex.1973); *Sunset Brick & Tile, Inc., v. Miles,* 430 S.W.2d 388, 393 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.).

In conclusion, we sustain Mr. Jackson's points of error one, three, and five, and we overrule Associated Developers' cross point. Our disposition of these points of error and the cross point is dispositive of this appeal. Therefore, we deem it unnecessary to further discuss any remaining contentions of the parties. Accordingly, we modify the judgment of the trial court to decree that Kerry L. Jackson recover from Associated Developers of Lubbock and Don Osborne the sum of Twenty-six Thousand Sixty-three and 69/100 dollars ($26,063.69), the jury's award, together with interest thereon at the rate of nine percent (9%) per annum from March 2, 1978, and all costs of suit, for which let execution issue. As modified, the judgment is affirmed.