**Jose BARRERA, Plaintiff-Appellee,**

v.

**E. I. DU PONT DE NEMOURS AND COMPANY, INC.,**
**Defendant-Appellant.**

**No. 80–1050.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 14, 1981.

Rehearing and Rehearing En Banc Denied
Oct. 20, 1981.

Mehaffy, Weber, Keith & Gonsoulin, Robert Q. Keith, Beaumont, Tex., Brian R. Davis, Austin, Tex., for defendant-appellant.

Tonahill & Hile, Joe H. Tonahill, Jasper, Tex., for plaintiff-appellee.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS *, District Judge.

GEE, Circuit Judge:

Du Pont appeals Jose Barrera's $300,000 judgment for personal injury. Not without some difficulty, we affirm.

In August 1976, Mr. Barrera, then a 36-year-old pipefitter, was working for an independent contractor on a job at a Du Pont plant near Beaumont, Texas. At the time of the incident, Mr. Barrera was grinding the edges of a freshly cut pipe that Du Pont had cleared and purged, certifying that it was safe for such work. Instead, while Mr. Barrera was grinding, perched with a helper on a scaffold some ten to fifteen feet off the ground, some gas from the severed line ignited with a "boom," according to Mr. Barrera, a "puff," according to his helper. The force of the ignition was insufficient to do any property damage or to injure Mr. Barrera physically in any way: one witness likened the report to the pop made when a gasoline lantern is lit, another testified that its force would have been sufficient to move a handkerchief but not a book. Nonetheless, Mr. Barrera became highly agitated and was taken to a physician, who prescribed a tranquilizer. His helper was not affected. This was all.

Mr. Barrera continued to work for S.I.P. Company, his employer at the time of the Du Pont incident, for some three months and was then laid off. During this period he received tranquilizers and some form of relaxation therapy. About a month later still, while he was working as a pipefitter for a subsequent employer, Technicon, a

* District Judge of the Western District of Texas, sitting by designation.

similar incident occurred.[1]  On this occasion he slipped and fell, injuring his left knee. According to Mr. Barrera, a relief valve popped off with a loud noise, causing this fall.  Also according to him, the Technicon accident was caused by the Du Pont incident because it had left him with a fear of loud noises.  The Technicon field superintendent testified, however, that the plant had been idle some two and one-half years, that the pipes there contained no pressure, and that it would have been impossible for a valve to pop off.  The Technicon accident left Barrera on crutches, but he refused knee surgery that an orthopedic surgeon recommended.

During this period Mr. Barrera retained counsel, who referred him to a psychiatrist, a Dr. Bailey.  Bailey, diagnosing plaintiff as suffering from "anxiety neurosis," admitted him to the Beaumont Neurological Center for eighteen days, during which he received medication and apparently improved.[2]

After his release from this treatment, Barrera apparently did not work for some three months until he moved to Michigan and began working for a contractor, Azco, on a power plant.  According to plaintiff's own testimony, by this time he had stopped taking medication and was handling his work "beautifully."  Shortly thereafter, in June of 1977, a fifth and final incident occurred, when he tripped on some cables at work, fell, reinjured his left knee, and "aggravated the nerves" all over again.  This injury resulted in his receiving knee surgery, as well as other treatment from a psychologist and a chiropractor.  In August 1978, Michigan Vocational Rehabilitation authorities referred plaintiff to Dr. Pieper, a clinical psychologist, who diagnosed plaintiff's condition as "post-traumatic neurosis" characterized by fear, anxiety, and apprehension.  He apparently did not work again until trial, in November of 1979.

The medical witnesses appear to agree that Mr. Barrera is suffering from a serious emotional disorder and further agree that his condition affects his concentration, attention, and stability and makes him accident prone.  At trial, two physicians testified that a connection of his condition with the Du Pont incident of August 1976 was "possible," one had no opinion, and a fourth testified that the more significant event was the Azco accident that caused the knee injury and consequent surgery.

A jury trial resulted in a judgment for plaintiff in the amount of $300,000 for his anxiety neurosis.  Motions for instructed verdict and for judgment n.o.v. were denied.

*Cause-in-fact and Foreseeability*

■ For purposes of our analysis, we shall assume negligence on the part of Du Pont.  This is a Texas diversity case, however, and in Texas a finding of proximate cause is an additional prerequisite to tort liability.  For a defendant's negligence to be deemed the proximate cause of a plaintiff's emotional injury, two elements must be established: that the negligent conduct was a cause in fact of the injury and that it was reasonably foreseeable to the defendant that injuries to the plaintiff's nervous system would be a natural and probable consequence of the negligent conduct. *Kaufman v. Miller*, 414 S.W.2d 164, 167 (Tex.1967).  In *Kaufman* the Texas Supreme Court held, *as a matter of law* and based on the above formulation, that a truck driver's neurosis resulting from his

---

1.  Mr. Barrera has suffered five somewhat similar incidents in a rather brief period of time. Two occurred before that made the basis of this suit, two after.  The earliest and most vaguely described of these took place in Chicago in 1970, when some toxic fumes in a drain blew up and, as he testified, "got to" him.  The next occurred on the last day of 1975, when a 450-pound steam line blew out on the job, frightening him greatly and, he initially testified, killing his partner.  He later amended this testimony, admitting that the steam did not kill his partner but "could have."

2.  Barrera had complained of, inter alia, being possessed by fears, having difficulty sleeping, and screaming at his wife and child.  Other characteristics of plaintiff's neurosis were extreme nervousness, a depressed mood, an abnormal speech pattern, and loss of sexual function.

emotional reaction to a trifling collision in which no one was physically injured was not reasonably foreseeable by the driver who bumped his rig lightly in the rear. In its opinion the court observed that "[r]ecovery is also generally denied when the plaintiff is unusually or peculiarly susceptible to emotional trauma and that fact is unknown to the negligent tortfeasor." *Id.* at 169. Of this, more later.

We have had occasion ourselves to construe and apply the *Kaufman* rule. In *Hall v. Atchison, Topeka & Santa Fe Railway Co.,* 504 F.2d 380 (5th Cir. 1974), we recognized limitations upon it and declined to apply it to a situation where the injury suffered was not limited to psychological injury:

> The defendant has urged that the injury sustained by Mrs. Hall in this case was not foreseeable as a matter of law, and has relied heavily on *Kaufman v. Miller,* Tex.1967, 414 S.W.2d 164. In *Kaufman,* the Texas Supreme Court held that it was not foreseeable, as a matter of law, that the plaintiff, the driver of a vehicle which was struck by the defendant's vehicle, without substantial damage to either vehicle or any personal injury, would later suffer a "conversion reaction neurosis" to which he was "peculiarly susceptible" as the result of an earlier accident. *Kaufman* denied recovery for the particular sort of psychological injury allegedly sustained as a result of the accident, but the Texas Supreme Court carefully limited its holding to the facts of the case, and declined to fashion a broad rule denying liability in all circumstances involving the infliction of psychological injury because

it recognized that "this field of law is in a developing process, as is the field of psychiatry." *Id.* at 171.

> In relying upon the narrow holding of *Kaufman,* the defendant obscures the distinction between that case and the one before us. *Kaufman* should be grouped with those cases denying recovery for intentionally or negligently inflicted emotional distress or other psychological injury not springing from some physical injury also inflicted in the same tortious conduct. In such cases, the courts have traditionally been reluctant to impose liability.

*Id.* at 385–86.

This is such a case as we envisioned in *Hall,* and to it *Kaufman* may apply. Here the defendant submitted a jury instruction phrased in terms of *Kaufman* language and, indeed, all but tracking this portion of its language. This was refused. After the court had instructed the jury and it had retired, the court invited objections to its charge. At this time, Du Pont's counsel renewed and broadened its complaint:

> I would reurge that the Court instruct the Jury substantially to the effect that if they find the Plaintiff was unusually susceptible to mental or emotional or nervous disturbance at the time of the incident of August, 1976, and if the Defendant had no knowledge of that effect, then under the law of Texas, and particularly Kaufman against Miller, by the Texas Supreme Court, and the restatement of Torts, Section 436(a)[3]; likewise, the Federal decision of Cooper against Miller, in 380 F.Supp. at 409,[4] and had the

**3.** If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.
Restatement (Second) of Torts § 436A (1965).

**4.** Mrs. Cooper heard the initial crash, looked up and then observed the truck overriding Mr. Helton's automobile and being propelled into her automobile and residence and was an eye witness to these occurrences. Mrs. Cooper was not injured nor was there any

direct force to her body that caused any injury to her body, although she is claiming, as will hereinafter be discussed, that the witnessing of the accident aggravated a preexisting physical ailment which she had and resulted in damages to her.

   . . . .

   However, it appears that recovery cannot be allowed to Mrs. Cooper in this case for any of her personal injuries, or matters related thereto, because of the lack of any foreseeability that would make the negligence of the defendants a proximate cause of such personal injuries. The defendants in this

court charged the Jury as such, then we may have averted a finding of liability and damages that might otherwise eventuate.

The difficulty here is that the law of Texas is unsettled as to whether the proposition picked from *Kaufman* and offered to the court as a charge is, standing alone, a correct one. *Kaufman* itself does not so hold. Instead, it holds as a matter of law that where *all* of several factors, two major and perhaps additional minor ones, are combined there can be no recovery:

(1) *Third-party Injury*: the mental shock in question results from injury or threatened injury not to plaintiff but to a third person;

(2) *Unusual Susceptibility*: the plaintiff is peculiarly susceptible to emotional trauma, and this is unknown to the tortfeasor (that sought here as a charge);

(3) *Other Factors*: the court's discussion of these is neither definitive nor, in our view, entirely clear; however, among them may be that the third party to whom injury was feared was the wrongdoer himself, that at the time plaintiff received his mental shock it was already apparent that no one had actually been physically injured, and that his neurosis developed slowly and did not incapacitate plaintiff until months had passed.

Concluding, the Texas court, writing almost fifteen years ago, makes plain the intentionally nondefinitive character of its decision:

> We recognize that this field of law is in a developing process, as is the field of psychiatry, and we would be reluctant to hold at this time that any one of the enumerated factors would of and by itself be sufficient to require a judgment denying liability. We are satisfied, however, that public policy is better served by denying liability when all are combined. In dealing with cases of this type on a case by case basis, we will be following a precedent set by the Supreme Court of North Carolina in *Williamson v. Bennett*, 251 N.C. 498, 112 S.E.2d 48 (1960), in which the facts bear a close similarity to the facts in this case.

*Kaufman v. Miller*, 414 S.W.2d at 171.

Thus we face the necessity of determining whether one of the major *Kaufman* factors, standing alone, constitutes a defense in Texas when the other—that of fear of injury to a third person—is not present. Here Barrera's fear was undisputedly of injury to himself, not to another. We cannot certify the question to the Texas court, for Texas, unlike most states in our circuit, has no certification procedure. We are remitted, then, to gleaning what we can from Texas authority handed down since *Kaufman*. Ironically, while there has been considerable development on the bystander liability factor not involved here, there has been almost none on "unusual unknown susceptibility," the one that is.

Insofar as the factor allowing bystander recovery for mental shock bears on recovery for purely emotional injuries generally, more recent Texas decisions indicate an increasing tendency to permit such recoveries. *E. g., Newman v. Minyard Food Stores*, 601 S.W.2d 754 (Tex.Civ.App.—Dallas 1980, no writ); *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n. r. e.); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ).[5] In *Bedgood v. Madalin*, 600 S.W.2d 773 (Tex.1980), the Texas Supreme Court reversed such an award, but it did so on the ground that the bystander cause had not

---

particular case, including the driver of the truck, in using ordinary care cannot be held to have foreseen that the driver's conduct on the occasion in question would result in this type of damage to the plaintiff. Accordingly the lack of such foreseeability by a person using ordinary care for personal injuries to Mrs. Cooper under these circumstances fore-

closes any recovery on her part for this element of damages. *Kaufman v. Miller, supra.* *Cooper v. Miller*, 380 F.Supp. 409, 410–11, 412 (N.D.Tex.1974).

5. For a more general discussion and additional Texas cases, *see* Flanary, *Bystander Recover in Texas*, 44 Tex.B.J. 746 (1981).

been pleaded, with three concurring justices indicating that in a proper case they would approve such an award.

The only post-*Kaufman* authority that our research has discovered that addresses the "unusual susceptibility" factor directly is *Quinius v. Estrada*, 448 S.W.2d 552 (Tex. Civ.App.—Austin 1969, writ ref'd n. r. e.), in which a Texas intermediate appellate court criticizes the Texas Supreme Court's statement of it as "far too broad." *Id.* at 558. As the writ notation cited above indicates, however, that opinion received no endorsement by the higher court, which affirmed the judgment only.

We conclude that we cannot deduce a firm Texas position from these later, intermediate court decisions. Neither could the trial court have done so. Nor can we divine one from the calculatedly Delphic opinion in *Kaufman*, one that does little more than adumbrate possible future developments and announce a result. Looking at general tort trends in Texas since *Kaufman*, we discern a tendency toward expanding concepts of liability and constricting defenses, both generally and as to emotional harms and the cognate area of bystander actions. Few limiting decisions exist, and what the outer limits of this general trend may be are not yet apparent. That some will be set we do not doubt, but whatever they may be, and their consequences for the state, are matters for the Texas courts, not for us. Suffice it to say here that for us to accept appellant's contention as to the "unusual susceptibility" defense would be to cut against the trend of Texas decisions in the area.

We are no more authorized to confect novel defenses for persons sued in the state courts of Texas than we are to acknowledge novel theories of recovery. As to such a novel theory, we have recently observed:

> In matters of Texas substantive law, our relationship to the Texas Supreme Court is all but identical to that of a Texas intermediate appellate court. Indeed, if it differs at all, as regards substantive innovation it is weaker instead of stronger than that of such a court.

> Even in the rare case where a course of Texas decisions permits us to extrapolate or predict with assurance where that law would be had it been declared, we should perhaps—being out of the mainstream of Texas jurisprudential development—be more chary of doing so than should an inferior state tribunal.

*Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409, 410 (5th Cir. 1980). We conclude that the same general approach should guide us here.

■ Texas courts have not yet declared the "unusual susceptibility" factor a defense standing alone, only when combined with, at the least, one other not present here. The charge sought by defendant here finds considerable support in reason and logic, as well as in the Restatement section cited in the request for it to the trial court, but it is not yet the law of Texas, and it may never be. Hence the court below correctly refused it.

### Two Small Matters

■ The appellant complains of two unrelated rulings by the trial court. The first is a portion of the court's charge to the jury that a congressional act (OSHA) required Du Pont to furnish "invitees, such as the Plaintiff, places of employment which are free from recognized hazards . . . ." This is erroneous; OSHA does not create duties between employers and invitees, only between employers and their employees; and it has long been settled in this circuit that, even between these latter, it creates no private cause of action. See *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir. 1975), *cited in Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1084 (5th Cir. 1980), for the proposition that OSHA creates no private cause.

■ Next, Mr. Barrera, in response to cross-examination about vocational rehabilitation and whether he should make some effort at establishing a small business, volunteered: "[W]ith what—I don't even have a penny in my pocket." Defendant, in response, sought to impeach him with the stipulated fact that Barrera was receiving

over $1,000 per month (in compensation and Social Security benefits), noting that the offer was for impeachment purposes only and not to establish a collateral source. The court, stating only, "That would be doing indirectly what you can't do directly," sustained the objection. This too was erroneous; all manner of matter otherwise inadmissible may, in a proper case, come in for impeachment purposes. The evidence, properly offered and clearly relevant for impeachment purposes, was improperly excluded simply because, under the collateral source rule, it would have been inadmissible as direct evidence. The proper inquiry was whether, under the balancing test of Rule 403, Federal Rules of Evidence, the evidence, though relevant, should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice...." *See United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979).[6]

 We agree with appellant that both of these actions by the trial court represent error, error in a case where the evidence is very close and may well, as we view it in the cold record, preponderate[7] against Mr. Barrera's claim that all his ailments are to be traced to one rather trivial incident, sandwiched between others of apparently greater severity. Each error, however, represents a small episode in a lengthy trial. The error in the court's charge as to duties created by OSHA to invitees is somewhat ameliorated by a later description of OSHA requirements as mere standards, relevant to deciding what constituted negligence in the premises. Nor was the particular issue on which it bore especially close: clearly Du Pont had purged this pipe and certified it as free from explosive gases before the small explosion occurred. As for impeachment,

Mr. Barrera was rather convincingly impeached by much other matter, yet the jury chose to believe him anyhow. We greatly doubt that this one additional item could have changed that result. In sum, we conclude that the errors complained of were not of such magnitude or consequence as likely to have affected the trial's outcome.

AFFIRMED.

---

**6.** Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. *As to such, Rule 403 is meant to relax*

the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. It is not designed to permit the court to "even out" the weight of the evidence .... (emphasis in original).

**7.** Not sufficiently, however, as to permit a reversal of the verdict's findings under the rule of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969).