**J.R. BEADEL AND COMPANY and Everett Lemond, Appellants,**

v.

**Joe De La GARZA, Appellee.**

**No. 05–84–00431–CV.**

Court of Appeals of Texas, Dallas.

April 1, 1985.

Rehearing Denied May 7, 1985.

Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellants.

Thomas A. Blakeley, Jr., Johnson, Blakeley, Johnson, Smith & Clark, Dallas, for appellee.

Before STEPHENS, ALLEN and GUILLOT, JJ.

STEPHENS, Justice.

Joe De La Garza recovered judgment from J.R. Beadel and Company, and Everett Lemond in a negligence action. Trial was to a jury. On appeal, appellants contend, in two points of error, that the trial court erred by its failure to submit their requested special issues on the failure of De La Garza to keep a proper lookout and further erred by its exclusion of evidence of worker's compensation paid to De La Garza. We disagree with both contentions and, accordingly, affirm the judgment of the trial court.

De La Garza was employed by Jacob E. Decker & Sons Meat Company. At the time of the accident he was operating a forklift to load pallets of meat into the rear of a tractor-trailer truck owned by J.R. Beadel & Company. The truck's driver was Everett Lemond, Beadel's employee. When the trailer was properly positioned, a hydraulic steel ramp was lowered from the dock to the truck. The ramp served as a bridge between the dock and the truck, over which the forklift could be driven to deposit the meat from the refrigerated warehouse.

After positioning the trailer, Lemond left the truck and went into the building for a cup of coffee. De La Garza and his co-worker Curtis Waldren began loading the truck.

While the loading was in progress, Decker's supervisor erroneously concluded that it was completed and told another employee on the way into the coffee shop to inform Lemond. Upon being informed that his truck was loaded, Lemond returned to his truck. The evidence shows that as Lemond approached his truck he saw that the warehouse door was open and that the metal ramp was still positioned on his trailer. He did not see De La Garza or Waldren because they were still inside the truck. However, without looking into the open trailer or attempting to have the ramp secured and the doors to the trailer closed, he got into the cab of the truck, started the engine, and pulled away from the dock. This caused De La Garza to fall to the parking lot with the forklift, and he was severely injured.

Appellants first contend that they were entitled to special issues on De La Garza's failure to keep a proper lookout because the evidence shows that De La Garza: (1) saw Lemond walk out of the building toward the parking lot; (2) knew that he might not hear the engine if it was started because of the noise of the refrigerated unit; and (3) knew that Lemond had not seen him as he left the building.

In determining the propriety of the trial court's denial of the issue on lookout, we must first determine whether or not De La Garza was under a duty to anticipate the negligence of the truck driver in driving his truck from the dock while loading was still in progress.

De La Garza and his supervisor both testified that since the hydraulic ramp had been installed, no one had ever pulled a truck away from the dock while the ramp was lowered into it. Further, De La Garza's testimony indicated that although he actually saw Lemond leave the building, he did not see him getting into the truck's cab. There was also testimony that: (1) although drivers customarily went back and forth to the cabs of their trucks during loading, they did not drive away; (2) the general practice of loading was followed by De La Garza and Waldren, which did not include stopping a driver who appeared to be headed toward his cab to determine whether he intended to pull away from the dock while the loading was in progress; and (3) in fact drivers often went to the cab of their truck to get cigarettes and other items while the truck was being loaded.

 Whether a duty exists under the facts and circumstances of a particular case is a question of law. *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 65 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). It is well-established that there is no duty to anticipate the negligent conduct of another person. *Henderson v. Morris,* 476 S.W.2d 471, 472 (Tex.Civ.App.—Amarillo 1971, no writ). As stated in *Rohan v. Baker,* the duty to look out is only for dangers "that *might reasonably be anticipated to exist.*" 470 S.W.2d 238 at 241 (Tex.Civ.App.—Houston [1st Dist.] 1971) (emphasis added). If the plaintiff cannot reasonably anticipate or have knowledge of the danger, he cannot be charged with contributory negligence, because knowledge is an essential element of contributory negligence. *Jackson v. Associated Developers of Lubbock,* 581 S.W.2d 208, 211 (Tex.Civ.App.—Amarillo 1979, writ. ref'd n.r.e.). Without knowledge, the duty to guard against the danger does not arise:

> [T]here is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience, and under such circumstances, the duty of foresight should not be arbitrarily imputed.

*Hadaway v. Lone Star Gas Co.,* 355 S.W.2d 590, 592 (Tex.Civ.App.—Fort Worth 1962, mand. overr.).

 In light of this evidence, we conclude that De La Garza was not chargeable with knowledge that Lemond might negligently move his truck. Thus, we decline to hold that De La Garza had a duty to antic-

ipate the danger. *Jackson*, 581 S.W.2d at 211.

Our holding is consistent with, and is supported by, the decision in *Texas Pipe Bending Co. v. Gibbs*, 580 S.W.2d 41 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e. at 584 S.W.2d 702 [Tex.1979]), in which the court held that the trial court properly refused to submit the issue of the plaintiff's lookout to the jury. The facts are similar to those presented here. The plaintiff drove to the defendant's place of business to pick up a load of pipe. A man operating a gin pole truck and his helper loaded the plaintiff's truck with pipe. The plaintiff then climbed on top of the load to tighten and secure chains around the pipe. While the plaintiff was chaining down his load, the gin pole operator prematurely began to remove the stakes holding the pipe on the truck and the plaintiff was knocked to the ground. The court held that even though the plaintiff knew that the gin pole operator was preparing to remove the stakes, the trial court properly refused an issue on the plaintiff's lookout:

> He [plaintiff] did not expect the operator of the gin pole truck to begin removing the stakes until he had finished booming the load. He had participated in the loading of pipe on the trailer many times at the Texas Pipe Bending plant. The evidence is insufficient to raise an issue as to whether he failed to keep such a lookout as would have been kept by an ordinary prudent person under the same or similar circumstances.

580 S.W.2d at 47.

Because we hold that, as a matter of law, no duty arose here for De La Garza to anticipate and keep a lookout for the negligent acts of another, we conclude that the trial court properly refused to submit a special issue to the jury on that question. Appellant's first point of error is overruled.

In their second point of error, Beadel and Lemond contend that the trial court erred in refusing to admit evidence that De La Garza had recovered workers' compensation benefits. They argue that the evidence should have been admitted for impeachment purposes, because De La Garza "opened the door" for impeachment when he testified that he must still work to support himself. Beadel and Lemond thus contend that evidence of De La Garza's receipt of workers' compensation benefits is some evidence of probative value that De La Garza is no longer required to work to support himself. We disagree.

■ Generally, information concerning workers' compensation benefits is inadmissible in a suit against a third-party tortfeasor because it is not material. *Pattison v. Highway Insurance Underwriters*, 278 S.W.2d 207, 210 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.). Moreover, evidence regarding workers' compensation benefits "would tend to confuse and mislead the jury in trying the issues of the third-party's liability." *Pattison*, 278 S.W.2d at 210. Exceptions to this rule have been made for impeachment purposes, but only when a witness has given testimony inconsistent with receipt of the benefits. In *Barrera v. E.I. DuPont De Nemours and Co.*, 653 F.2d 915 (5th Cir.1981), for example, the plaintiff stated that he did not even have "a penny in [his] pocket." 653 F.2d at 920. The court of appeals found that the defendant should have been permitted to introduce evidence that the plaintiff was presently receiving over $1,000.00 per month in benefits because it was "clearly relevant for impeachment purposes." *Barrera*, 653 F.2d at 921. In *Barrera*, then, the credibility of the plaintiff was at issue because his testimony that he was penniless was clearly inconsistent with the evidence that he was currently receiving over $1,000.00 per month.

■ Here, however, De La Garza's testimony that he needed to work to support himself is not inconsistent with his receipt of the workers' compensation. Beadel and Lemond's bill of exception showed that De La Garza received a total of $30,187.00 in workers' compensation benefits and that those benefits ceased in 1982. This suit came to trial in 1984. There was also evidence that De La Garza earned $21,403.00 in salary at Decker in 1980, the year before

he was injured; that he had not worked at Decker since his injury; and that the jobs he had found since the injury paid only approximately half of his former salary figure at Decker. De La Garza's testimony that he "now" must work to support himself is not inconsistent with any of the foregoing evidence, especially in light of his testimony in the bill of exception that the workers' compensation benefits ceased at least a year and a half before trial.

We hold that De La Garza did not "open the door" for impeachment purposes, and that the trial judge was correct in excluding the evidence.

The judgment of the trial court is affirmed.