**EXXON CORPORATION, Appellant,**

v.

**James SHUTTLESWORTH, et ux., Appellees.**

**No. C14–89–01155–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 11, 1990.

William R. Hurt, Peggy O. Donley, Houston, for appellant.

Robert A. Berry, Paul F. Ferguson, Jr., Kevin Dubose, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

This is a personal injury case. Appellees, James and Diane Shuttlesworth sued appellant, Exxon Corporation ("Exxon") for injuries sustained by Mr. Shuttlesworth while working at an Exxon refinery. The case was tried to a jury which apportioned negligence at 51% for Exxon and 49% for Shuttlesworth. The jury also awarded $1,400,000.00 to James Shuttlesworth and $100,000.00 to Diane Shuttlesworth. The trial court entered judgment on the verdict and Exxon now appeals. In three points of error, Exxon claims the jury's award for loss of earning capacity was excessive because there was insufficient evidence and that the trial court erred in excluding certain relevant evidence. We affirm.

James Shuttlesworth was employed as a pipefitter for Brown and Root, Inc., which was engaged in dismantling and installing pressure piping for Exxon at its Baytown refinery. On January 21, 1982, Shuttlesworth was among a group of Brown and Root employees installing metal pipe "shoes" on a multi-tiered pipe rack. Each of the pipe shoes, measuring 12 to 18 inches long and weighing 15 pounds, were to be positioned underneath newly installed pipes so they could be welded to prevent excessive rubbing and wear of the pipes. Shuttlesworth was working from a ladder and hammering in a shoe on the bottom

level of pipe, approximately 7 to 8 feet above the ground, when a shoe fell from above and struck him in the shoulder and back. Shuttlesworth has not worked since the accident.

In its first point of error, Exxon claims the trial court erred in overruling its motion for new trial and request for remittitur because there was insufficient evidence to support the jury's award for past and future, loss of earning capacity. In answer to question 7 of the charge, the jury awarded Shuttlesworth $182,000.00 for loss of earning capacity in the past and $624,000.00 for loss of earning capacity in the future. Exxon contends this was excessive because Shuttlesworth failed to unequivocally prove he was unemployable. Exxon says Shuttlesworth's injury did not render him unemployable because he was in fact released to return to sedentary work. Instead, it was Shuttlesworth's failure to seek remediation for his dyslexia which actually rendered him unemployable.

In determining whether damages are excessive, an appellate court should examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient, or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). Appellees were not required to show loss of earning capacity by unequivocal proof. *See Doria v. Texas Dept. of Human Resources*, 747 S.W.2d 953, 955 (Tex.App.—Corpus Christi 1988, no writ). The record clearly reflects that Shuttlesworth suffered some permanent disability and physical impairment. Shuttlesworth's orthopedic surgeon, Dr. Paul Griffin, testified by deposition that Shuttlesworth's disability and impairment was permanent to the extent of certain physical restrictions placed on him. These restrictions prohibited Shuttlesworth from any heavy labor and limited any future employment to sedentary work. There was also evidence from Shuttlesworth's neurosur-

geon, Dr. Antonio Moure, which supported Dr. Griffin's conclusions.

The record further reflects that attempts to place Shuttlesworth in a remediation program and to teach him how to read for purposes of sedentary employment failed. The testimony of Richard Ruppert, a certified rehabilitation counselor hired by Brown and Root, reflects that Shuttlesworth was turned down as a candidate for one learning program because of his 43 years of age. Ruppert testified that age is a common factor why individuals cannot be retrained to overcome dyslexia problems. He also stated he did not know whether Shuttlesworth could have been retrained and remediated if he (Shuttlesworth) had started in a psychoanalytical training program in 1983. Finally, Ruppert concluded that based on observations, testing, and medical reports, Shuttlesworth was "severely limited as to what he could do". According to Ruppert, this limitation included Shuttlesworth's ability to function in a sedentary capacity.

There is also testimony from Shuttlesworth's wife, who is a school teacher, on attempts to teach Shuttlesworth how to read. She testified that after obtaining literature and attending workshops, she started "working with" her husband "several times over a couple years". She detailed several approaches she used to teach her husband, all of which failed to bring about any progress.

Furthermore, Shuttlesworth himself testified that he did not try to obtain the services of a learning disability specialist, because he was told there was nothing that could be done for his dyslexia due to his age and the severity of the problem. He also testified to Ruppert's failure to place him in a training program and to find him employment. Shuttlesworth stated that if there was something he could do in terms of employment, he would do it. The evidence was sufficient for the jury to reasonably conclude that Shuttlesworth was unemployable.

Finally, Shuttlesworth introduced, without challenge from Exxon, evidence of his

earnings for the six years preceding his injury. As appellees point out in their brief, if the $24,305.00 Shuttlesworth earned in 1981 (the year before his injury) is multiplied by seven and a half years (the time between the injury and trial), the product is $182,287.00. This is almost the same as the $182,000.00 the jury awarded for loss of earning capacity in the past. In addition, if the same $24,305.00 is multiplied by twenty-two years (the amount of time he would have worked, absent disability, ie. age 65), the product is $676,635.00. This is close to the $624,000.00 the jury awarded for loss of earning capacity in the future.

■ Loss of earning that a plaintiff will suffer in the future is always uncertain and is left largely to the jury's sound judgment and discretion. *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492 (Tex.App.—Houston [14th Dist.] 1989, writ ref'd). Moreover, damages for loss of earning capacity do not have to be based on any specific degree of physical impairment, but can be based on a composite of all factors affecting earning capacity. *Id.* The jury's award was not excessive. From the evidence presented, the jury could reasonably have found that Shuttlesworth suffered damages of $182,000.00 for loss of earning capacity in the past, and would suffer $624,000.00 for loss of earning capacity in the future. Point one is overruled.

■ In its second point of error, Exxon contends the trial court erred in sustaining Shuttlesworth's objection to Exxon's exhibit no. 42. To obtain reversal of a judgment, based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Company,* 765 S.W.2d 394, 396 (Tex.1989).

■ Exhibit no. 42 is entitled foreman's report of injury. Shuttlesworth objected

not only to the authenticity of this report, but also to its reliability, because it was not dated and it contained opinions by a Brown and Root foreman who was absent from the trial. Shuttlesworth also objected because the report contained subsequent remedial measures taken by Brown and Root with regard to his conduct. Prior to trial, the court put these objections "on hold". When Exxon attempted to introduce the report during the testimony of Shuttlesworth's liability expert, Rodney Nolan, and during the testimony of Brown and Root's former safety coordinator, Bruce Newsome, the trial court sustained appellees' objection. However, the substance of any objection, by either appellees or appellant, as well as the basis of any of the court's rulings, were off the record. Furthermore, Exxon made no offer of proof. Nevertheless, the report is in the record and we conclude that the trial court properly excluded the report. Tex.R.Civ.Evid. 801.

■ Even if it was error for the trial court to exclude the report, such error was harmless. Exxon claims otherwise, because Nolan relied on the excluded report in his testimony. As a result, Exxon says it was deprived of its right to cross-examine Nolan concerning the contents. In addition, Exxon states the report raised important disputed facts concerning the date and time of the accident and whether Shuttlesworth's injury was caused by another incident.

The record reflects that the report was simply cumulative of other evidence presented at trial. Dr. William Donovan testified by deposition that both Brown and Root and Shuttlesworth related he (Shuttlesworth) had been injured on January 21, 1982, when he was hit by a steel shoe. Dr. Donovan also testified that Shuttlesworth's injury of January 21st was probably worsened by Shuttlesworth's activities on the job, four days later. Additionally, Dr. Griffin testified that Shuttlesworth stated he had been hit on the right shoulder by a piece of steel in January, 1982. Furthermore, Shuttlesworth's fellow employee,

Glen Arnold, testified he observed Shuttlesworth on January 21, 1982, walking "stiff and slumped back". Arnold also testified that Shuttlesworth indicated to him on that same day that his (Shuttlesworth's) low back was hurting. In addition, both Michael Walker, Shuttlesworth's foreman, and Don Ancelet, a welder for Brown and Root, testified by deposition to the occurrence of Shuttlesworth's injury on January 21, 1982. Finally, Shuttlesworth testified that on the morning of the accident, between 7:30 a.m. and 7:45 a.m., he was reassigned by the foreman to hammer steel shoes. He also testified that he began the job 45 minutes later and that he hammered four or five steel shoes before the accident. Shuttlesworth further explained that on January 25th, he did not participate in rolling steel but was simply checking off the invoice. He stated that the only time he exercised his back on that day was when he stooped down to look at a serial number on a steel beam.

 The exclusion of evidence is harmless if the evidence is merely cumulative of other evidence in the record. *Pyle v. Southern Pacific Transportation Company,* 774 S.W.2d 693, 696 (Tex.App.—Houston [1st Dist.] 1989, writ denied). We find that the contents of exhibit no. 42 is cumulative of other evidence in the record. Exxon was free to cross-examine witnesses concerning the facts contained in exhibit no. 42. While Nolan's testimony was given before the testimony of most of the other witnesses, if Exxon wished to cross-examine Nolan more thoroughly, it could have done so by recalling him to the stand. It made no attempt to do so. Point two is overruled.

 In its third point of error, Exxon claims the trial court erred in denying it's request to introduce evidence of appellees' financial condition for impeachment purposes. Generally, information concerning worker's compensation benefits is inadmissible in a suit against a third party tortfeasor because it is not material. *J.R.*

*Beadel and Co. v. De La Garza,* 690 S.W.2d 71, 74 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Exceptions to this rule have been made for impeachment purposes, but only when a witness has given testimony inconsistent with receipt of the benefits. *Id.* For example, when a plaintiff testifies he is penniless as opposed to testimony by him that he needs to work to support himself, the former is inconsistent with receipt of benefits. *See id.*

Exxon cites us to *Johnson v. Reed,* 464 S.W.2d 689 (Tex.App.—Dallas 1971, writ ref'd n.r.e.), cert. denied 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972). In *Johnson,* the injured plaintiff testified on direct that she needed to work to support her daughter. The court held that she injected the issue of her poverty and that it was permissible for the defendant to cross-examine her with regard to receipt of child support payments. We think the plaintiff's testimony in *Johnson* concerning the need to work to support her daughter is similar to the plaintiff's testimony in *Beadel* concerning the need to work to support himself. To the extent *Johnson* is inconsistent with *Beadel,* we disapprove of it.

Initially, we note error is preserved since the record reflects the substance of Exxon's proposed offer and the basis of the court's ruling. Tex.R.App.P. 52(b). Exxon contends that Shuttlesworth "opened the door" to impeachment on his collateral sources of income during the following direct testimony:

Q: Since you got hurt out at the Exxon Refinery, has there been any increased stress or frustration or things like that or friction between you and your wife?

A: Yes, sir.

Q: Okay. Has it caused you to love her any less?

A: No, sir.

Q: It is just that from time to time it makes things difficult?

A: Yes, sir.

Q: Has it in any way changed or disrupted any of the plans that you and

Dianne had for your future before this happened?

A: Yes, sir.

Q: In what respects?

A: Well, we just—of wanting to retire at a later age and enjoy ourselves, to send our daughter to college and things of that nature.

....

Q: Back in 1982, had you and Dianne ever had any thoughts about having another child?

A: Yes, sir. We'd thought about it.

Q: Has this incident had any effect on those plans?

A: Yes, sir, it did.

Q: In what way?

A: Well, we just hated to try to have another child with my financial situation.

We hold that Shuttlesworth's testimony is not inconsistent with receipt of benefits and precluded any evidence of collateral sources. We are aware of our recent holding in *Mundy v. Shippers, Inc.*, 783 S.W.2d 743 (Tex.App.—Houston [14th Dist.] 1990, no writ), however, the above testimony is far from an assertion of poverty which is inconsistent with receipt of benefits. 690 S.W.2d at 74. In *Mundy*, there was ample testimony from both the plaintiff's brother-in-law and his wife about the plaintiff's inability to pay the bills. In fact, the Mundy's had numerous and substantial sources of income, including income from a rent house. Like the questions in *Mundy*, the questions asked here were somewhat open-ended and not restricted to any time period, however, Shuttlesworth's responses were short and general in nature. Furthermore, the record does not fully reflect what other sources of income, if any, the Shuttlesworths had. We refuse to dispense with the collateral source rule simply because the plaintiff generally mentioned his financial situation. Point three is overruled.

▬ Appellees bring a cross-point contending this appeal is taken for delay and without sufficient cause, and ask for a 10% penalty. TEX.R.APP.P. 84. We disagree. The rule for delay damages should be applied with prudence, caution and after careful deliberation. *Lloyd Electric Company v. Millett*, 767 S.W.2d 476, 484 (Tex. App.—San Antonio 1989, no writ). We must look at the case from the point of view of the advocate and determine whether he has reasonable ground to believe that the case would be reversed. *Id.* Exxon had an adequate basis for this appeal. Appellees' cross-point is overruled.

The judgement of the trial court is affirmed.

PAUL PRESSLER, J., not participating.