**Alvin and Susan MUNDY, Appellant,**

v.

**SHIPPERS, INC., Appellee.**

**No. C14–88–315–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 4, 1990.

Rehearing Denied Feb. 1, 1990.

Dennis L. Brown, Sharon L. Michaels, Houston, for appellant.

Mike Morris, Leonard J. Decker, III, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

OPINION

ELLIS, Justice.

This is an appeal from a judgment entered in a personal injury action tried to a jury. Alvin and Susan Mundy (appellants) filed suit against Shippers, Inc. (appellee or Shippers) for injuries sustained by Alvin Mundy and alleged to be proximately caused by the negligence of Shippers. The jury answered Special Issues, refusing to find liability on the part of Shippers, and the trial court entered judgment in favor of Shippers. We affirm.

Appellants bring two points of error on appeal, complaining that the trial court erred in (1) admitting the testimony concerning collateral sources of income and benefits received by appellants; and (2) in permitting improper jury argument in violation of the collateral source rule.

Appellant, Alvin Mundy, sustained injury to his left leg and lower back when he fell through the trailer bed of a truck in an on-the-job accident. Mundy was a longshoreman working at the Port of Houston on March 28, 1983, the date of his accident. After his accident and his back surgery, Mundy was limited in the variety of tasks he could perform as a longshoreman. He could not lift anything in excess of 25 pounds or engage in activities requiring significant bending or climbing. Mundy's services were restricted largely to tow mo-

tor work and working containers. Mundy testified the number of hours of actual work he could secure through his union local was reduced from a pre-accident average of 2,000 hours yearly to a post-accident average of 1,400 hours yearly. Mundy testified that prior to his accident he grossed $1,000.00 per week whereas after his accident he grossed between $450.00 and $500.00 per week.

In their first point of error, appellants complain the trial court erred in allowing evidence of collateral sources of income and benefits received by them. We note initially that appellants provided this court with only a partial statement of facts containing the testimony of Alvin Mundy, Mrs. Mundy, William Ingram (Mrs. Mundy's brother), Lucas Wisniakowski, Gene Paul Barcelo, Johnny Withers, and George Folsom. Appellants designated that the voir dire and testimony of several other witnesses be omitted. In their April 11, 1988 request to the District Clerk to prepare a partial statement of facts, there was no indication that appellants designated the points to be relied upon for appeal.

Tex.R.App.P. 53(d) provides:

If appellant requests or prepares a partial statement of facts, he shall include in his request or proposal a statement of the points to be relied on and shall thereafter be limited to such points. If such statement is filed, there shall be a presumption on appeal that nothing omitted from the record is relevant to any of the points specified or to the disposition of the appeal. Any other party may designate additional portions of the evidence to be included in the statement of facts.

The initial sentence of Rule 53(d) states that points to be relied upon by an appellant *shall* be included in appellant's request for a partial statement of facts. It is undisputed that appellants in the instant case did not designate their points of error to be relied upon on appeal. Under these circumstances, we must presume the omitted portions of the record support the judgment and the verdict of the trial court. *Deleon v. Dr. Pepper Bottling Company of Corpus Christi*, 694 S.W.2d 381, 382 (Tex.App.

—Corpus Christi, 1985 writ ref'd n.r.e.); *Dresser Industries, Inc. v. Forscan Corporation*, 641 S.W.2d 311, 314, 315 (Tex.App. —Houston [14th Dist.] 1982, no writ). Further, we find the trial court did not abuse its discretion in allowing evidence of collateral source income.

William Ingram, the brother of Mrs. Mundy, testified as a fact witness for the appellants during their case-in-chief. On re-direct, Ingram provided the following testimony:

Q: Has his injury put any stress that you've been able to notice on your sister?

A: Yes, sir.

Q: Could you tell us what you have noticed in that regard?

A: Well, personally I don't know how she's made it. I know she's come to me and cried. We are real close. Just seriously trying to make ends meet with the checkbook and what dollars are going to pay for who and she's had to borrow money from me before to get the water turned back on. They turned the water off. I had to loan her the money to get her water turned back on or her lights several times—just close to a nervous breakdown.

Q: Do you think those problems are related to this injury?

A: Yes.

Q: How?

A: Well, the income is not as great and, of course, her nerves is cause of that she just—it's hard to handle. I don't know what else to say.

It was during Mrs. Mundy's cross-examination when testimony as to collateral sources of income and benefits was elicited, over objection. Mrs. Mundy stated that during the 20 months subsequent to her husband's accident, they had received $1,900.00 per month. Mrs. Mundy also revealed the following benefits received by appellants: $7,000.00 or $8,000.00 from Social Security; approximately $2,100.00 from a separate disability policy; a $28,000.00 lump sum payment due to Alvin Mundy's

accident; payments by the Union on the Mundy's car note during the time Alvin Mundy was off work; $500.00 per month from a house rented out by the Mundys.

Appellants complain that such testimony violated the Collateral Source Rule, the rationale of which is to exclude evidence of collateral benefits to prevent the jury from reducing the amount of actual damages by the amount of the collateral sources. *Traders & General Insurance Company v. Reed*, 376 S.W.2d 591 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). Appellee counters that it was appellants, themselves, who opened the door for testimony in regard to collateral benefits when they injected the issue of poverty into their case-in-chief. Specifically, appellee contends that the testimony of William Ingram effectively telegraphed to the jury that Alvin Mundy was forced to turn to his brother-in-law to have the lights and water turned back on and that this testimony deserved to be rebutted by truthful evidence of appellants' financial circumstances. We agree.

In *Johnson v. Reed*, 464 S.W.2d 689 (Tex. Civ.App.—Dallas, writ ref'd n.r.e.), the Dallas Court of Appeals held that "Appellant herself injected the issue of her poverty and it was perfectly permissible for appellees, on cross-examination, to develop and rebut such evidence." *Johnson*, at 693. In the case before us, not only did appellants' fact witness (William Ingram) inject the issue of poverty, but appellant, Mrs. Mundy, also clearly indicated that she and her husband lacked the financial resources to pay their bills. Mrs. Mundy testified on direct examination as follows:

Q:  What is your relationship with Alvin—has it changed your marital relationship changed since this injury?

A:  Well, it has become like now sometimes if I don't have quite enough money to meet the bills, I'm scared to tell him. I'm not real scared. I hate to tell him because I know he's doing the best he can and then it's always boils down to trying to keep his ego up. (sic).

We note also that the testimony provided by Ingram and Mrs. Mundy as to appellants' financial hardship was in response to open-ended questions posed on re-direct and direct examination respectively. The questions, as outlined above, were not limited in scope to any time period. In addition, we note that by means of Mrs. Mundy's re-direct examination, counsel for appellants emphasized to the jury that appellants would have to reimburse any compensation received by them out of any recovery had in the law suit. Further, in response to the jury's inquiry, the trial court specially instructed the jury *not* to disregard any testimony concerning reimbursement of medical expenses and also *not* to consider medical reimbursement in determining what medical expenses, if any, were to be assessed in the past or future. On the basis of the record before us, we find there was no abuse of discretion on the part of the trial court in allowing the introduction into evidence of collateral source benefits received by appellants. Point of error one is overruled.

■ In their second point of error, appellants complain that the references made to collateral source benefits by appellee's counsel during closing argument were improper and prejudicial such as to require reversal and remand. As explained above in our disposition of point of error one, we find no abuse of discretion in the trial court's admission of evidence as to collateral sources of income received by appellants. Thus, we find appellee's jury argument references to appellants' collateral sources of income to be legitimate and reasonable deductions from evidence properly before the jury. Further, we note that appellants have failed to preserve error on this point for appellate review. Tex.R. Civ.P. 324(b)(5) reads in relevant part:

"**(b) Motion for New Trial Required.** A point in a motion for new trial is a prerequisite to the following complaints on appeal:

(5) Incurable jury argument if not otherwise ruled on by the trial court."

Appellants neither registered a contemporaneous objection at trial nor did they

designate improper jury argument as a point of error in their Motion for New Trial as required by TEX.R.CIV.P. 324(b)(5). Point of error two is overruled.

Accordingly, we affirm the judgment of the trial court.