Affirmed and Memorandum Opinion filed August 31, 2006








Affirmed and Memorandum Opinion filed August 31, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00345-CV

____________

 

JOHN EARNEST HILL, JR; JOHN ANTHONY
HILL, MATTHEW DAVID HILL, AND GRACIE LOVE HILL, MINOR CHILDREN BY AND THROUGH
NEXT FRIEND JOHN EARNEST HILL, JR.; AND CHRISTINA HILL, WIFE OF JOHN EARNEST
HILL, JR.,
Appellants

 

V.

 

CONSOLIDATED CONCEPTS, INC., Appellee

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 01-62777

 



 

M E M O R AN D U M   O P I N I O N








John Hill[1]
was injured when he fell from a roof while installing metal shingles.  He
brought suit against Consolidated Concepts, Inc. (ACCI@) alleging
ordinary and gross negligence.  The jury found that Hill was 51% negligent, and
CCI was 49% negligent.  Because the jury apportioned more than 50% negligence
to Hill, they did not reach the damages questions.  Hill appeals with four
issues: (1) the trial court reversibly erred by preventing admission of
evidence establishing that CCI was obligated to comply with the Occupational
Safety and Health Act (AOSHA@); (2) the trial
court reversibly erred by not admitting certified OSHA administrative records;
(3) the trial court reversibly erred by permitting CCI to ask Hill about his
social security disability benefits; and (4)  the trial court reversibly erred
when it failed to grant a mistrial or reprimand CCI=s counsel during
CCI=s closing argument
for mentioning Hill=s social security disability and Medicare
benefits.  We affirm.

Factual and Procedural Background

On October 29, 2000, John Hill was installing a metal roof
on a McDonald=s in Seymour, Indiana.  Hill was working as a
subcontractor for CCI.[2] 
He was not using any fall protection, though that protection was required by
industry standards.  While installing the metal shingles, Hill fell from the
one-story roof, hit his left foot on a handicapped-parking sign, and was
severely injured.  Due to the severity of his injuries, Hill was taken to a
hospital in Indianapolis, Indiana, where he was admitted until November 20,
2000.

During Hill=s initial hospital visit in October and November
of 2000, he underwent  multiple surgeries to stabilize his injury.  Hill=s left ankle,
tibia, and fibula had been shattered by the fall.  Additionally, Hill suffered
from an IV site infection, and a methicillin-resistant staph aureus infection. 
Physicians in Indianapolis discharged him believing they had properly
stabilized the injury and addressed the infections; Hill then returned to
Texas.  Yet, he continued to suffer from an infection in his leg and underwent
numerous other surgeries in Texas to treat the infection.  Ultimately, Hill
received a below-knee amputation because the infection could not be controlled
or eliminated.  There was conflicting testimony as to the cause of the
infection, but that testimony is unimportant for purposes of this appeal.








Before his injury, Hill had worked in manual labor,
primarily roofing and installation of vinyl siding.  After his injury, he
attempted to resume work as a manual laborer, but was unable to do so.  He
could no longer move as he once did and, following the amputation, the skin on
his stump would become infected if he worked outside.  Hill introduced
testimony suggesting that financial hardship prevented him from retraining for
a new career, although a vocational rehabilitation counselor had recommended he
do so.  CCI rebutted that impression of poverty with evidence of Hill=s receipt of
social security disability benefits showing that Hill was not as poverty-stricken
as he implied by his testimony.

A.      Safety
Equipment and Assumption of Duty

Appellant brought suit against CCI alleging ordinary and
gross negligence.[3] 
The chief dispute between Hill and CCI was not whether fall protection would
have prevented the injuryCthe testimony was undisputed that it would
haveCbut who had the
responsibility to provide the protection.  Hill accepted some responsibility
for the injury, but contended CCI was more at fault.  Hill argued CCI had
provided fall protection to him in the past, but refused to do so for the
McDonald=s jobs in
Indiana.  Hill also introduced evidence that CCI was installing metal roofs on
numerous McDonald=s restaurants and that he had installed
metal roofs on other McDonald=s restaurants before the Seymour job. 
Importantly, CCI=s project manager, Ted McCollum, trained
Hill on the proper installation of these metal roofs.  Yet, Hill testified
McCollum never informed him that fall protection was necessary.  Additionally,
Hill testified that he had asked McCollum for a safety harness on a McDonald=s job prior to the
work in Seymour, and McCollum refused to provide one; McCollum allegedly told
Hill to either get on the roof, or return to Texas.  Thus, Hill=s position was
that CCI had assumed the duty to provide safety equipment, but specifically
refused to do so for the McDonald=s jobs; Hill also
contended that CCI led Hill to believe that fall protection was not necessary
under industry standards for the one-story McDonald=s structures.








Hill also attempted to prove that CCI had a general past
practice of providing safety equipment to subcontractors.  Hill and CCI
disagreed on whether CCI had a policy of providing safety equipment.  CCI
admitted to lending safety harnesses on a large roofing job in 1995.  However,
CCI maintained that because it was unable to recover that equipment, and
therefore lost money on the arrangement, it had not provided equipment since. 
CCI acknowledged a policy of purchasing safety equipment for subcontractors, if
requested, and then subtracting the cost of equipment out of its final payment
to the subcontractor.  Hill countered with evidence that CCI continued to
maintain a stock of safety equipment, which it continued to provide to its
subcontractors even after the 1995 job.  As a result, Hill argued, CCI was
responsible for safety at the work site because it assumed that duty.  To prove
Hill had assumed responsibility for his own safety, CCI presented evidence of
an agreement Hill signed, in which he agreed to comply with all OSHA standards
and regulations.  Believing this evidence opened the door to prove OSHA
regulations required CCI to provide safety equipment, Hill offered evidence of
OSHA regulations, citations issued to CCI and the accompanying fines paid, and
other certified administrative documents.  The trial court disagreed with Hill=s argument and
would not admit that evidence.

B.      Collateral
Sources

During closing argument, CCI referenced collateral sources
of income.  Although the trial court had allowed brief questioning of social
security disability benefits during the trial, it did so for the limited
purpose of rebutting an impression of poverty before the jury.  Evidence that
Medicare had paid for some of Hill=s treatment was
also admitted in a video deposition and there is no objection in the record to
this evidence.  Commenting on the evidence, CCI made the following argument:

[CCI]: Let=s talk about medicals and wages.  You
heard what Dr. Duval had to say.  You heard what Mr. Hill had to say about
disability.  And, really, they want you to put down some tremendous numbers for
all of this and it=s being taken care of.

 








(Emphasis
added).  Hill immediately objected and moved for a mistrial; the trial court
held a bench conference in which the motion was denied and it instructed CCI
not to Asay anymore about
it.@  The trial court
agreed with CCI that it could discuss social security disability benefits
insofar as the Adoor was opened@ regarding
poverty.  The trial court did not rule that CCI could use the evidence beyond
the limited purpose for which it was admitted.  The trial court then instructed
the jury that it was not to consider any collateral sources of income in
reaching its verdict.  Despite the trial court=s ruling, CCI soon
made this statement:

[CCI]: Ms. Chalfin [vocational
rehabilitation counselor] wants to say he=s a motivated guy.  Well, I disagree.  He=s working part-time, cash only for
a reason.  He is collecting his disability benefits - - 

(Emphasis
added).  Hill again objected immediately and the trial court held another bench
conference.  The trial court denied the motion for mistrial again, refused Hill=s request to
reprimand CCI before the jury, and again told CCI to stop referring to
collateral sources.  Following the bench conference, the trial court again
reminded the jury not to consider collateral sources when answering the
questions.  

C.      Jury
Findings and Appeal

The jury determined that Hill was 51% negligent, and CCI
was 49% negligent.  As a result, it did not reach the damages questions.  Had
the jury apportioned to CCI at least 50% negligence, Hill would have received
damages.  Hill contends that, because the difference between the jury=s answer and an
answer that would allow some damages was only 1%, any error in the trial was
harmful enough to warrant a reversal.  While this argument has some merit,
because we hold the trial court did not err in its rulings and took appropriate
action to cure any harm, and because the improper jury argument concerned
damages onlyCquestions the jury did not reach, we affirm the
judgment of the trial court.

 








Analysis

I.        OSHA
Evidence

Appellants raise two issues concerning the trial court=s rulings that
OSHA evidence was inadmissible.  The first is that the trial court reversibly
erred when it admitted a form in which Hill agreed to comply with OSHA
standards and regulations, but then refused to admit OSHA evidence purportedly
imposing a similar duty upon CCI.  The second issue is that the trial court
reversibly erred when it refused Hill the opportunity to introduce evidence of
certified OSHA administrative records that would impeach the deposition
testimony of CCI=s president, Dusty Kent. 

The trial court did not allow appellants to introduce their
desired evidence because it determined the trial involved common law
negligence, not OSHA regulations.  We review rulings on evidence for abuse of
discretion.  In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).  Even if
there is error, we will not reverse unless the complaining party can show that
the error was reasonably calculated to cause and probably did cause rendition
of an improper judgment.  McCraw v. Maris, 828 S.W.2d 756, 757 (Tex.
1992).    Because we agree with the trial court that OSHA evidence was
irrelevant, we affirm.

A.      OSHA
Regulations were Irrelevant and the Form did not Open the Door








The trial court ruled that OSHA regulations would not be
admissible, and indeed, OSHA regulations did not become an issue at the trial.[4] 
Appellants argue that admitting a signed form, in which Hill agreed to comply
with OSHA, opened the door for them to prove that OSHA regulations placed
responsibility for safety on CCI.  Essentially, appellants believe that CCI
made OSHA regulations and standards an issue in the trial.  We disagree.

The OSHA evidence at issue was irrelevant to this case. 
This was a negligence case, based in common law.  Duty is the threshold
question for a negligence case.  Yeager v. Drillers, Inc., 930 S.W.2d
112, 115 (Tex. App.CHouston [1st Dist.] 1996, no pet.). Hill
had to prove that CCI owed him a duty before he could prevail on his claim.  It
was precisely for this point that he wanted to introduce OSHA regulations. 
However, our common law is not expanded by OSHA regulationsCeither a general
contractor owes a duty based upon our common law principles, or it does not.  See
29 U.S.C. _ 653(b)(4) (stating that the regulations are not intended
to affect common law duties); see also McClure v. Denham, 162 S.W.3d
346, 352B53 (Tex. App.CForth Worth 2005,
no pet.).  Therefore, the regulations were not relevant to the issue of duty.[5] 
They may not be used to establish negligence per se.

However, Hill argues CCI opened the door to evidence of
OSHA regulations when the trial court allowed evidence regarding the assumption
of duty.  It was on this issue that the form regarding Hill=s compliance with
OSHA was admitted.  Both sides hotly contested that the other had assumed a
duty to provide safety equipment.  To rebut Hill=s theory, CCI
introduced a form in which Hill had agreed to follow all OSHA regulations and
safety guidelines.  Thus, Hill believes, CCI opened the door to all OSHA
regulations through this piece of evidence.  We disagree because the form
contained no reference to any particular OSHA regulation placing responsibility
on Hill.  Indeed, the trial court admitted no regulation for either side on the
issue of responsibility or duty.  Additionally, CCI never argued Hill had a
statutorily mandated duty.  The sole purpose of the form was to show that Hill,
not CCI, assumed responsibility for safety.  Had there been similar evidence
that CCI had assumed responsibility for safety, that, too, would have been
admissible.  








Perhaps the distinction is fine between the type of
evidence CCI offered and the trial court admitted and what Hill desired to
admit, but it is important.  On one side, CCI admitted evidence of voluntary
assumption of duty, and on the other Hill sought introduction of regulations that
impose federal dutiesCregulations that, by their express terms,
do not alter common law duties.  The trial court correctly determined in the
first instance that evidence of OSHA regulations  was not admissible to prove
any element of the offense.  It also ruled correctly that admission of the form
did not open the door to admission of OSHA regulations.  We overrule appellants= first issue.

B.      OSHA
Administrative Records Inadmissible

Arguing a theory of impeachment, Hill contends he should
have been allowed to introduce certified administrative records showing OSHA
had cited and fined CCI for roofers= failure to wear
fall protection.  Hill also wanted to admit a certified record of an
administrative OSHA  proceeding against CCI.  Hill posits that these records
were admissible to impeach the deposition testimony of CCI=s president, Dusty
Kent.  In his deposition, Kent denied knowledge of certain OSHA regulations,
citations CCI had received, and accompanying fines paid, as well as its
practice of providing safety equipment in the past.  The records showed the
citations CCI received and the fines it paid, the regulations pertinent to Hill=s job as a roofer,
and a transcript in which CCI=s vice president outlined CCI=s 1995 practices
of providing safety equipment.  

We disagree with Hill=s position for two
reasons.  First, the testimony at trial was consistent with the OSHA evidence. 
Also, Hill was permitted to explore fully the basic evidence he sought of past
practices regarding safety equipment and what the industry safety standards
were.  Therefore, impeachment with the OSHA evidence was unnecessary.   Second,
as we have explained, evidence of whether OSHA would hold CCI responsible for
any safety violations through citations and fines is irrelevant to the issue of
common law negligence; therefore, the citations and fines paid had no bearing
on liability.








 

1.       The Administrative Hearing
Evidence was Inadmissible

 

Hill acknowledges that Kent never denied making the
deposition statements at trial but nevertheless argues he should have been
allowed to impeach Kent=s deposition testimony because Kent denied
knowledge of many of these facts.[6] 
However, Hill does not explain how the rules of evidence permit such
impeachment.  At trial, Hill elicited the desired testimony regarding past
practices and safety.  He then had the opportunity to use the deposition
testimony to show inconsistent statements.  If prior testimony conflicts with
trial testimony, the proper method of attacking credibility is to use that
prior testimony to impeach the trial testimony in accordance with Texas Rule of
Evidence 613(a).  At that point, a litigant has accomplished her goal of
impeaching the witness.  A litigant may not then continue and impeach the prior
testimony.  That reasoning would allow an unending line of impeachment. 

Additionally, during the trial, there was ample evidence
presented concerning industry standards for safety, as well as CCI=s past practices
concerning whether it or the subcontractors ensured those standards were met. 
Specifically, Hill elicited considerable testimony about CCI=s practice on a
1995 construction job when it provided safety harnesses to all roofers.  Hill
also elicited testimony from CCI=s representatives
that they still own that equipment, and that, upon request, they will purchase
safety equipment for subcontractors and then deduct the cost from final payment
to the subcontractor. 

2.       OSHA
Fines and Citations Inadmissible








We will not belabor the point again; the fines and
citations were inadmissible for the purposes offered.  Even if Kent had denied
that CCI had received those fines and citations in his depositionCwhich is not
entirely clearCthe evidence is still inadmissible because it was
irrelevant.  Moreover, Hill cannot successfully argue that a lie, as he
characterizes it, during a deposition necessarily allows admission of otherwise
irrelevant, confusing, and misleading evidence without laying the proper
foundation for impeachment.  However, as we have noted, the trial court did not
believe Kent was misleading, evasive, or deceptive in his deposition.  In any
event, Hill=s reasoning on these facts is unpersuasive.  With no
inconsistent trial testimony from Kent on these matters, introduction of fines
and citations for impeachment is a hypothetical question only because, as we
have explained, a litigant may impeach trial testimony only.

C.      Summary

Having determined the trial court did not err in excluding
the contested evidence, we overrule appellants= first and second
issues.

II.       Collateral
Source Doctrine

In their third issue, appellants complain the trial court
admitted evidence that Hill was receiving social security disability benefits. 
Appellants rely on the general rule precluding a tortfeasor from obtaining the
benefit of even mentioning payments to the injured party from sources other
than the tortfeasor.  Taylor v. Fabritech, Inc., 132 S.W.3d 613, 626
(Tex. App.CHouston [14th Dist.] 2004, pet. denied); see also
Mundy v. Shippers, Inc., 783 S.W.2d 743, 745 (Tex. App.CHouston [14th
Dist.] 1990, writ denied) (explaining that the rule=s rationale is to
prevent the jury from reducing the amount of actual damages by the amount
received from  collateral sources).  CCI counters that Hill  injected the issue
of poverty and financial hardship into the case and thereby opened the door to
the admitted evidence.  See Taylor, 132 S.W.3d at 628; Mundy, 783
S.W.2d at 745.  The trial court=s decision was within the zone of
reasonable disagreement and thus the  trial court did not abuse its discretion
and there is no error.

Through testimony from Hill, appellants stated that they
were under financial hardship:








[Counsel]:    John
[Hill], you already said that you were off work for a good while with all those
infections and the amputation.  How did you feel during this time period when
you were off work, John?

[Hill]:            It was
stressful.  I couldn=t do anything.  I couldn=t provide for my family.  It was
kind of hard to deal with.

[Counsel]:    How did you feel when
your doctors finally told you you could go back to work?

[Hill]:            It was a relief.

[Counsel]:    Why were you
relieved, John?

[Hill]:            I was excited. 
I get to get out of the house and get to do something.

[Counsel]:    What about paying
your bills?

[Hill]:            Yeah, that=s always a relief.

                   . . .

[Defense]:    Okay.  Well, Mr.
Hill, Ms. Chalfin just testified that she referred you to the Texas
Rehabilitation Commission to get you some vocational and retraining and
rehabilitation services and that was over a year and a half ago and you have
never gone; why is that?

[Hill]:            For
one, I don=t know how to get it set up, number two, I mean, if
you can=t afford day care
- - I=ve got a three
year-old and when I am not working I take care of my daughter.  








 The trial court was within its discretion determining that
appellants injected the issue of poverty and financial hardship into the case. 
These statements indicated that Hill had trouble paying his bills until he was
able to begin working, and then still was financially constrained after
beginning to work again.  Thus, trial court could determine that Hill=s testimony was
inconsistent with the receipt of benefits.  See Exxon Corp. v. Shuttlesworth,
800 S.W.2d 902, 907B08 (Tex. App.CHouston [14th
Dist.] 1990, no writ) (affirming trial court=s refusal to admit
evidence of collateral sources when testimony was only a general reference to
plaintiff=s financial condition and did not amount to evidence
inconsistent with the receipt of benefits).  CCI was therefore permitted to
rebut that false impression.  See Taylor, 132 S.W.3d at 628; Mundy,
783 S.W.2d at 745.  The trial court did not abuse its discretion in admitting
the evidence of social security disability payments for the limited purpose of
rebutting appellants= suggestion of financial hardship and
poverty.  We overrule appellants= third issue.

IV.      Improper
Jury Argument

In their final issue, appellants argue CCI=s closing argument
outlined above was improper and harmful so as to require reversal and remand
for a new trial.  We agree the jury argument was improperCas did the trial
courtCbut disagree that
it was harmful requiring reversal.  Although CCI contends it was entitled to
argue the evidence before the jury, it has cited no authority for the
proposition that evidence admitted for a limited purpose may be argued to the
jury outside of that purpose and in a wholly inappropriate way.  However, as
the argument concerned damages questions, which the jury did not reach, and
because we presume the jury followed all instructions, we cannot conclude the
improper comments caused harm.

The trial court admitted two types of evidence during the
trial regarding collateral sources of income.  The first was testimony from Dr.
Duval=s video deposition
in which he stated Hill=s bills were paid by Medicare.  The second
was the rebuttal testimony regarding social security disability payments.  Both
represent testimony on collateral sources of income.  The testimony regarding
Medicare was admitted without objection.[7] 
However, evidence of the social security disability payments was admitted over
objection, for a limited purpose.  Thus, any use of that evidence outside of
that limited purpose was improper.

 

 

 

 








A.      Mention of Collateral
Sources Does Not Automatically Render Verdict Improper

 

When collateral sources of income are mentioned at trial,
it does not automatically require reversal.  Cf. Babcock v. Nw. Mem=l Hosp., 767 S.W.2d 705,
708 (Tex. 1989) (stating that the mere mention of insurance does not
automatically require reversal).  There are four factors that must be satisfied
before we will reverse the judgment on the basis of a jury argument: (1) argument
was improper; (2) such argument was neither invited nor provoked; (3)
preservation of the error by proper trial predicate; and (4) incurability of
the error by instruction, withdrawal of the statement, or a reprimand by the
trial judge.  Brown v. Hopkins, 921 S.W.2d 306, 318 (Tex. App.CCorpus Christi
1996, no writ) (citing Standard Fire Ins., Co. v. Reese, 584 S.W.2d 835,
839B40 (Tex. 1979)). 
The Brown court also acknowledged that any error would be harmless if
the questions affected were rendered immaterial.  See id. at 318B19 (overruling
issue because jury=s answer to a particular question was
immaterial in light of its answer of no negligence and no proximate cause on
previous answers); see also Riggins v. Broach Stations, Inc.,
14-94-00086-CV, 1996 WL 50596, at *2 (Tex. App.CHouston [14th
Dist.] February 8, 1996, no writ) (not designated for publication) (holding
that when the jury finds against the claimant on liability and does not reach
damages, any error in violating the collateral source rule is harmless).  Here,
both bases suffice to overrule this issue.  The harm was cured, and the issue
became immaterial in light of the jury=s apportionment of
negligence.








The first three Standard Fire factors are satisfied
in this case.  The argument was improper, it was neither invited nor provoked,
and the issue was properly preserved by an objection an adverse ruling from the
trial court.  The fourth factor, however, weighs against Hill.  The trial court
sustained Hill=s objections to the mention of both collateral
sources, Medicare and social security disability payments.  The trial court
also instructed the jury twice that it was not to consider collateral sources
for any matter whatsoever; those instructions were in addition to the charge,
which the trial court orally explained also mandated that the jury not reduce
any award of damages due to collateral sources.  Although the trial court did
not reprimand CCI=s counsel in front of the juryCwhich clearly
would have been appropriateCit presumptively cured the error.  We
presume that jurors follow the instructions they are given.  Taylor, 132
S.W.3d at 625.  Absent evidence to the contrary, we must presume the jury did
not take any collateral source evidence into account when reaching its verdict.

The second basis for affirmance is that the argument
concerned damages only, an issue at trial rendered immaterial in light of the
jury=s apportionment of
negligence.  See Brown, 921 S.W.2d at 318; Riggins, 1996 WL
50596, at *2.  Hill forcefully argues that the statement infected the jury=s consideration of
negligence, and so cannot be separated.  Hill cites no authority for this
proposition.  However, he does make a logical argument that CCI=s jury argument
was engineered to prejudice the jury into believing Hill was simply a
malingerer.  Also, the jury argument carried with it an implication  that Hill
was a liar who was collecting cash payments so as to defraud the government. 
The statements leading to the first mention of Medicare concern CCI=s position that A[CCI is] sorry,
[but] they are not being straight with you.@  CCI then goes on
to make the two contested statements.  Both carry the implication that the
financial impact of Hill=s situation is being taken care of by
other sources, that he is a malingerer, and that he has engineered his
situation so as to receive government benefits, a paycheck, and legal relief. 
Yet, we cannot presume the jury actually adopted this view, that it ignored the
trial court=s instructions, and instead considered evidence on one
issue when deciding another issue.[8]








We  presume the jury followed the trial court=s instructions and
admonitions.  The trial court gave appropriate curative instructions and orally
charged the jury that they were not to consider the collateral sources of
income in reaching their verdict.  Moreover, the improper jury argument
concerned damagesCquestions the jury never reached.  We
cannot, therefore, determine that there was any harm from the improper
argument.  We overrule appellant=s final issue.

Conclusion

We hold that the evidence of OSHA regulations, citations,
and fines paid were irrelevant to the issues of this case.  The trial court
properly excluded that evidence.  Evidence from certified OSHA records was also
inadmissible for purposes of impeachment. We further conclude because
appellants injected poverty and financial hardship into the case, the trial
court did not err in permitting rebuttal evidence on this point.  Finally, we
hold that, despite CCI=s improper jury argument, there was no
harm because the trial court cured any error and the jury=s resolution of
the liability issue  made immaterial any harm resulting from improper jury
argument about damages.  We affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 31, 2006.

Panel consists of
Justices Hudson, Fowler, and Frost.

 









[1]  Although there are multiple appellants, because they
all assert derivative claims, we will refer to them collectively as AHill@ or AAppellants.@





[2]  CCI has only four employees, a president,
vice-president, an accountant, and an assistant to the accountant.  At times,
CCI also employs project supervisors.  However, CCI does not directly employ
roofers as employees; its roofers are subcontractors.





[3]  Hill  also sued other defendants, but those
defendants were not parties to the lawsuit below.





[4]  The trial court admitted ample evidence of industry
standards concerning appropriate fall protection and when that fall protection
is required.  These standards are the same as the standards under OSHA. 
Introducing evidence of OSHA standards for the purpose of showing the
cumulative wisdom of the industry is permissible.  See Carillo v. Star Tool
Co., 14-04-00104-CV, 2005 WL 2848190, at *2 (Tex. App.CHouston [14th Dist.] November 1, 2005, no pet.) (not
designated for publication).   However, the trial court did not allow OSHA
regulations and standards to be admitted for any other purpose.  As we explain
below, the ruling was proper as the regulations Hill sought to admit did not
bear on the issue of safety.  Therefore, we do not believe this general rule of
admissibility applies in this case.





[5]  Additionally, the OSHA regulations likely would have
only confused and misled the jury into believing that CCI had a federally
mandated duty to Hill that it should enforce in this suit.





[6]  The trial court determined that Kent=s testimony during the deposition was not necessarily
deceitful or evasive.  We need not determine whether this ruling was correct as
Hill=s proffered method of impeachment would have been
improper here.





[7]  Clearly, given the context in which Dr. Duval
discussed Medicare payment, the purpose for its admission was to show that he
was not a doctor bought by plaintiffs=
attorneys.  Yet, there is no objection or request for a limiting instruction in
the record.  Thus, we cannot say there was any limitation on its use.  However,
the trial court sustained an objection to the use of this evidence during jury
argument for an improper purpose and appropriately instructed the jury
regarding its use, presumptively curing any error.  





[8]  The jury was instructed in the charge that it must
not decide who it thought should win the case and answer the questions
accordingly.  Again, we presume the jury followed these instructions.